UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Luan Pham Doan,<br><br>　　　Plaintiff,<br>vs.<br><br>Doe Defendant "1" a/k/a "Tina", Doe Defendant "2" who designed, created and controlled Ablsursum.com; Doe Defendant "3" who designed, created and controlled "Odensa.com"; and John Doe Defendants 4-9 and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:<br><br>Gate.io:<br><br>0x14f97447e213fab6ad5e8e0a51a0c9930cdf1d4d<br>0x89ec49a1a5dde8ce46a27da9f433d2eadfb4a179<br><br>OKX:<br><br>0x8329dfed7ca686e1e4227af4491aa9fc92ed9dfe<br>0x3ec8ab0f225061fc963d4759fec5d5232ea049d3<br>0xAc51ffa7048190233dafc13ea5f6ff97205fccd1<br>0x559432e18b281731c054cd703d4b49872be4ed53<br><br>　　　Defendant(s). | Civil Action No. _____<br><br>COMPLAINT FOR VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT<br><br>DEMAND FOR JURY TRIAL |

　　　Plaintiff, Luan Pham Doan ("Plaintiff"), by and through undersigned counsel, sues Doe Defendant "1" a/k/a "Tina", Doe Defendant "2" who are currently unknown individuals or businesses who designed, created and controlled a malicious cryptocurrency trading platform called Ablsursum.com; Doe Defendant "3" who are currently unknown individuals or businesses who designed, created and controlled a malicious trading platform called "Odensa.com", and Doe Defendants 4-9 ("Defendants"), who are the owners of the cryptocurrency deposit wallet addresses at Gate.io and OKX exchange platforms:

　　　**Gate.io:**

- 0x14f97447e213fab6ad5e8e0a51a0c9930cdf1d4d; and
- 0x89ec49a1a5dde8ce46a27da9f433d2eadfb4a179.

**OKX**:

- 0x8329dfed7ca686e1e4227af4491aa9fc92ed9dfe;
- 0x3ec8ab0f225061fc963d4759fec5d5232ea049d3;
- 0xAc51ffa7048190233dafc13ea5f6ff97205fccd1; and 0x559432e18b281731c054cd703d4b49872be4ed53.

## PRELIMINARY STATEMENT

1. Defendants stole more than $10,000,000 (USD) from Plaintiff pursuant to a sophisticated global internet investment and cryptocurrency fraud and conversion scheme.

2. Doe Defendant "1" a/k/a "Tina" played a material role in the theft of Plaintiff's assets, and upon information and belief, she and her cohorts currently possess all or a significant portion of Plaintiff's stolen assets.

3. Plaintiff brings this lawsuit to recover his stolen assets.

## SUBJECT MATTER JURISDICTION AND VENUE

4. This is an action for damages related to the theft of Plaintiff's assets as further detailed below. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). This action includes damages pursuant to 18 U.S.C. § 1964 (the "Racketeer Influenced and Corrupt Organizations Act" or "RICO"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

5. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).

## THE PARTIES AND PERSONAL JURISDICTION

6. Plaintiff, Luan Pham Doan, an individual, is *sui juris*, and is a resident and citizen of Texas.

7. Doe Defendant "1" a/k/a "Tina" is an individual, is *sui juris*, and is subject to the personal jurisdiction of this Court. Defendant "1" represented to Plaintiff that her name was "Tina". Defendant represented to Plaintiff that she was originally from Singapore but currently living in New York City, New York.

8. Doe Defendants 2 and 3 are the designers, creators, and controllers of the malicious trading platforms Ablsursum.com and Odensa.com. Doe Defendants 2-3 are *sui juris* and are subject to personal jurisdiction in this court.

9. Doe Defendants 4-9 are the cohorts of Doe Defendants 1-3 and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:

- Gate.io:
    - 0x14f97447e213fab6ad5e8e0a51a0c9930cdf1d4d
    - 0x89ec49a1a5dde8ce46a27da9f433d2eadfb4a179

- OKX:
    - 0x8329dfed7ca686e1e4227af4491aa9fc92ed9dfe
    - 0x3ec8ab0f225061fc963d4759fec5d5232ea049d3
    - 0xac51ffa7048190233dafc13ea5f6ff97205fccd1
    - 0x559432e18b281731c054cd703d4b49872be4ed53

10. Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Texas and this district through at least two fraudulent websites Ablsursum.com and Odensa.com which can be accessed on the internet and on smartphones and is accessible from Texas.

11. Doe Defendant 1 made fraudulent representations to Plaintiff while in Texas and instructed Plaintiff to access the fraudulent websites Ablsursum.com and Odensa.com while he was within the State of Texas. The theft of Plaintiff's assets as a result of the sophisticated investment

scam occurred while Plaintiff was within the State of Texas and within this District. Defendants' nefarious scheme caused significant harm to Plaintiff while in Texas, and Defendants knew that they would be subject to the laws of Texas.

12. Moreover, Defendants are foreign nationals and are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

13. Doe Defendants 4-9 are *sui juris* and subject to the personal jurisdiction of this court. Doe Defendants 4-9 have intentionally concealed their identity as part of their scheme to defraud Plaintiff, but as part of their conspiracy directed fraudulent communications towards Plaintiff in Texas, causing Plaintiff to suffer significant economic and emotional harm while in Texas.

14. At all times material hereto, Defendants have maintained and continue to maintain private cryptocurrency wallets and cryptocurrency exchange accounts in which all or a portion of Plaintiff's stolen cryptocurrency currently sits.

## ALLEGATIONS COMMON TO ALL COUNTS

**A. Defendants Execute an International Cryptocurrency Theft Scheme**

15. Plaintiff is a victim of not only a nationwide but also a worldwide RICO conspiracy known as "pig butchering."

16. Pig butchering scams are "fraudulent crypto investment schemes directed from Asia," which are now a billion-dollar industry.[1]

17. Pig butchering scams run and perpetrated by organized criminal groups in

---

[1] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/

Southeast Asia, are called such because the victims are "likened to hogs fattened up for slaughter."[2]

18.  The scammers, typically located in Southeast Asia, carefully research their victims, and can spend months grooming the victim to gain their trust.

19.  Pig butchering scammers utilize expertly crafted copycat websites that replicate authentic trading platforms. These scammers simulate trades and returns and the victims are unaware of the scheme.[3]

20.  The perpetrators of these so-called pig butchering scams befriend victims and over time build up trust. Once that trust is gained, the perpetrators claim to be experts in cryptocurrency investments, fraudulently represent themselves to be experts in cryptocurrency investing, and convince victims to send their digital assets to fake copycat exchanges.

21.  In September of 2023, FinCEN issued an alert to warn United States citizens of the threat of pig butchering scam, explaining:

> "Pig butchering" scams resemble the practice of fattening a hog before slaughter. Victims invest in supposedly legitimate virtual currency investment opportunities before they are conned out of their money. Scammers refer to victims as "pigs," and may leverage fictitious identities, the guise of potential relationships, and elaborate storylines to "fatten up" the victim into believing they are in trusted partnerships before they defraud the victims of their assets—the "butchering." These scams are largely perpetrated by criminal enterprises based in Southeast Asia who use victims of labor trafficking to conduct outreach to millions of unsuspecting individuals around the world.[4]

22.  Likewise, in an alert warning United States citizens about these scams, the Office of the Inspector General explained, "[Pig butchering] is a type of confidence and investment fraud in which the victim is gradually lured into making increasing monetary contributions, generally in the form of cryptocurrency, to a seemingly sound investment before the scammer disappears with

---

[2] https://www.nbcnews.com/news/crime-courts/pig-butchering-scams-rise-fbi-moves-stop-bleeding-rcna137009
[3] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/
[4] Exh. A, FinCEN Alert on Prevalent Virtual Currency Investment Scam Commonly Known as "Pig Butchering."

the contributed monies."[5]

23. Plaintiff had no experience trading cryptocurrency prior to being approached by Defendant "1" a/k/a "Tina".

24. On or about February 2025, Plaintiff was contacted by Doe Defendant "1" a/k/a "Tina" with an invitation for friendship via WhatsApp using phone number +1 (646) 732-3482.

25. Doe Defendant "1" told Plaintiff that she would help him invest in Bitcoins where the returns are very high.

26. After gaining Plaintiff's trust, Defendants encouraged Plaintiff to sign up for a fraudulent online cryptocurrency exchange Ablsursum.com which was subsequently changed to Odensa.com. Defendant fraudulently claimed that his cryptocurrency wallet addresses hosted by these trading platforms were controlled only by him.

27. After familiarizing himself with the process of trading on the fraudulent website recommended by Doe Defendant "1," and in reliance on the foregoing false and fraudulent misrepresentations, Plaintiff started to transfer cryptocurrency from his Crypto.com and Kraken accounts, legitimate third-party online platforms for buying, selling, transferring, and storing cryptocurrency, to the fraudulent platforms.

28. To gain additional trust, Doe Defendant "1" enticed Plaintiff to begin investment starting with a small amount of $100 (USD). Doe Defendant "1"

29. Doe Defendant "1" further enticed Plaintiff to invest by representing to Plaintiff that she made a deposit of $10,000 to the Plaintiff's account on the trading platforms.

30. Doe Defendant "1" represented to Plaintiff that he would need to wait for her instructions to trade.

---

[5] Exh. B, Office of the Inspector General Warning on Pig Butchering Scams.

31. Defendants posted fraudulent returns on their fake websites which made it appear that Plaintiff was making significant profit on his cryptocurrency trades.

32. From October 2024 through approximately April 14, 2025, Plaintiff transferred a significant amount of his wealth to the fraudulent platforms totally more than $10,000,000 worth of cryptocurrencies and wire transfers.

33. Because of the fraudulent representations contained on the malicious platforms, and misrepresentations made by Doe Defendant "1", Plaintiff believed that he had made significant money from his investments.

34. Plaintiff was told by Defendant "1" that the value of his cryptocurrency had grown to nearly $50 Million, which was reflected on the fraudulent statements.

35. On or about April 2025, Plaintiff decided to withdraw the funds from the fraudulent exchange.

36. The Plaintiff attempted to reach what he thought was Odensa.com customer service to get instructions on how to withdraw the funds.

37. Defendants represented to Plaintiff that to withdraw the profits, he would need to pay a fee. After Plaintiff paid the fee, Defendants demanded network node fees. Plaintiff paid the fees but was still unable to withdraw funds.

38. Defendants represented to the Plaintiff that he would need to pay a fee equivalent to 1% of the total in the fraudulent account to withdraw the funds and if he failed to do so, he would be charged an additional $50,000 daily penalty.

39. This is when Plaintiff realized he had been scammed.

**B. Plaintiff's Forensic Tracing of His Stolen Cryptocurrency**

40. When a transaction is made on the blockchain it is assigned a "transaction hash"

("TXID"). A transaction hash is a unique string of characters that is given to every transaction that is verified and added to the blockchain. A TXID is used to uniquely identify a particular transaction. All on-chain transactions (the transactions from or to external addresses) have a unique TXID that can be seen in transaction details. All on-chain transactions (depositing and withdrawing of funds) have a unique TXID that can be found in transaction details.

41.     Plaintiff has retained experts who traced nearly $6 Million worth of his stolen cryptocurrency to six deposit wallets on the Gate.io and OKX exchanges which are owned and controlled by Doe Defendants 4-9. Attached hereto as Exhibit "A" is the tracing report completed by experts at CoinStructive. Plaintiff incorporates Exhibit "A" into his complaint.

42.     As the tracing shows, Doe Defendant "1" with the help of multiple co-conspirators opened numerous cryptocurrency wallets owned by Doe Defendants 4-9 to launder the stolen cryptocurrency to the identified foreign cryptocurrency exchange.

## COUNT I
## RACKETEERING IN VIOLATION OF 18 U.S.C. § 1964

43.     The operation of Doe Defendants 4-9, individually and through their sophisticated global internet investment fraud business and conversion scheme constitutes a racketeering operation.

44.     Doe Defendant "1" directed and coordinated with the other Defendants as yet unidentified additional parties ("RICO Enterprise," or "Enterprise") within the meaning of 18 U.S.C. § 1964(4), which Enterprise was engaged in, or the affairs of which affected, interstate and foreign commerce.

45.     The Defendants were each also members of the RICO Enterprise, as each was a distinct person, separate and apart, from each of the RICO Enterprise members together.

46.     The RICO Enterprise engaged in a pattern of racketeering activity.

47. Each person's participation was effective partly because each mimicked an actual on-going business (including the fraudulent platformOdensa.com) with a presence in the marketplace: the United States and indeed worldwide.

48. As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to every member.

49. As set forth above, the RICO Enterprise engaged in the following predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1): Wire fraud in violation of 18 U.S.C. § 1343.

50. The predicate acts set forth in this Complaint, include defrauding Plaintiff from October 2024 through April 2025, through domestic and international telephone communication including WhatsApp messaging, and through the conversion of Plaintiff's assets to their own through the use of bank wire transfers and cryptocurrency traded on the blockchain.

51. The predicate acts set forth in this Complaint are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events. The related criminal schemes set forth in this Complaint constitutes a "pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5).

52. The Defendants engaged in two or more predicated acts of racketeering within a period of ten years and committed at least one such act after October 15, 1970.

53. The information that would establish further predicate acts and further acts of racketeering is solely within the control of Defendants. Plaintiff requires discovery to ferret out the further extent of predicate acts and further acts of racketeering, including the identity of similarly situated defrauded victims and the scope of the systematic fraud.

54. Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an interest in, or in the establishment or operation of, the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(a).

55. Defendants through a pattern of racketeering activity maintain, directly or indirectly, an interest in or control of the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(b).

56. Doe Defendant "1" was associated with the RICO Enterprise, and conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein in violation of 18 U.S.C. § 1962(c).

57. Doe Defendant "1" and her cohorts Doe Defendants 2-9 as yet unidentified additional parties, each entered into a conspiracy to conduct or participate, directly or indirectly, in the conduct of the RICO Enterprises' affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(d).

58. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered significant damages.

**WHEREFORE,** Plaintiff Luan Pham Doan demands that judgment be entered against the Defendants, jointly and severally, as follows:

    (a)    damages;

    (b)    statutory trebled damages pursuant to 18 U.S.C. § 1964(c);

    (c)    punitive damages;

    (d)    costs, including reasonable attorney's fees, pursuant to 18

     U.S.C. § 1964(c);

(e)  costs;

(f)  interest; and

(g)  such other and further relief as this Court deems just and proper.

## COUNT II
## CONVERSION

59.  Through fraudulent misrepresentations, Defendants convinced Plaintiff to invest his money into cryptocurrency.

60.  Defendants then convinced Plaintiff to transfer his cryptocurrency to the fake exchange owned and operated by Defendants and bank wire transfers that were supposed to be invested in cryptocurrency assets.

61.  After Plaintiff transferred his assets to the fake exchange platforms, Defendants then transferred Plaintiff's assets to foreign banks and his cryptocurrency-to-cryptocurrency addresses owned and controlled by the Doe Defendants.

62.  Defendants misappropriated Plaintiff's funds.

63.  Defendants have converted Plaintiff's funds to their own use or to the use of others not entitled thereto and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment.

64.  Plaintiff has suffered damages as a direct and proximate result of Defendants' conversion.

  **WHEREFORE**, Plaintiff Luan Pham Doan demands that judgment be entered against the Defendants, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT

65. Plaintiff conferred a direct benefit upon Defendants by transferring the valuable cryptocurrency that Defendants converted from Plaintiff.

66. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit.

67. The circumstances under which Plaintiff conferred, and Defendants accepted, render Defendants' retention of the benefits inequitable.

68. Equity required that Defendants return to Plaintiff the benefits he conferred upon Defendants.

**WHEREFORE**, Plaintiff Luan Pham Doan demands that judgment be entered against the Defendants, jointly and severally, for damages, interest, costs, and such other further relief as this Court deems just and proper.

## COUNT IV
## IMPOSITION OF CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS

69. This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendants.

70. This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

71. As set forth above, Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

72. The cryptocurrency assets at issue are specific identifiable property and have been traced to Gate.io and OKX.

73. Any and all assets being held by Defendants at Gate.io and OKX must be held in trust for Plaintiff's benefit, and Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

74. The digital assets identified herein which are being held by Defendants at Gate.io and OKX must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

**WHEREFORE**, Plaintiff Luan Pham Doan demands the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of the Defendants, in the identified cryptocurrency wallet addresses held at Gate.io and OKX and further demands that the wrongfully obtained property be returned to Plaintiff.

## COUNT V
## CONSPIRACY

75. The Defendants conspired and confederated with each other to commit, and committed, Conversion (Count II); and Unjust Enrichment (Count III).

76. Relying on the false statements made by Doe Defendant "1", including that she was an expert in cryptocurrency investments, Plaintiff transferred his cryptocurrency assets to fake cryptocurrency platforms which were in actuality deposit addresses owned by the RICO enterprise and ultimately to wallets owned and controlled by Doe Defendants 4-9.

77. Defendants conspired with others via the fraudulent website Ablsursum.com, Odensa.com and WhatsApp where they communicated with Plaintiff. Doe Defendants 4-9 are the owners of the cryptocurrency deposit addresses where Plaintiff's stolen cryptocurrency was transferred.

78. As a result, Plaintiff has suffered damages as a direct and proximate result of

Defendants' conspiracy.

**WHEREFORE**, Plaintiff Luan Pham Doan demands that judgment be entered against the Defendants, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

### DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

### VERIFICATION

I, Luan Doan, hereby declare under penalty of perjury that I have read the foregoing COMPLAINT and verified all statement herein are true and correct to the best of my knowledge, understanding, and belief.

Dated: June 30, 2025

_____
Luan Pham Doan (Jun 30, 2025 15:16 PDT)

LUAN DOAN, Plaintiff

Dated: June 30, 2025

By: */s/ Marshal J. Hoda*
Marshal J. Hoda, Esq.
Tx. Bar No. 24110009
**THE HODA LAW FIRM, PLLC**
3120 Southwest Fwy Ste. 101 PMB 51811
Houston, TX 77098
Telephone: 832-848-0036
marshal@thehodalawfirm.com

and

By: */s/ Daniel J. Thornburgh*
Daniel J. Thornburgh, Esq.
Attorney-in-Charge
(*Pro Hac Vice Forthcoming*)
**AYLSTOCK, WITKIN, KREIS
& OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449
dthornburgh@awkolaw.com

*Attorneys for Plaintiff*