UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Luan Pham Doan<br><br>        Plaintiff,<br><br>vs.<br><br>Doe Defendant "1" a/k/a "Tina", Doe Defendant "2" who designed, created and controlled Albsursum.com; Doe Defendant "3" who designed, created and controlled "Odensa.com"; and John Doe Defendants 4-9 and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:<br><br>Gate.io:<br><br>0x14f97447e213fab6ad5e8e0a51a0c9930cdf1d4d<br>0x89ec49a1a5dde8ce46a27da9f433d2eadfb4a179<br><br>OKX:<br><br>0x8329dfed7ca686e1e4227af4491aa9fc92ed9dfe<br>0x3ec8ab0f225061fc963d4759fec5d5232ea049d3<br>0xAc51ffa7048190233dafc13ea5f6ff97205fccd1<br>0x559432e18b281731c054cd703d4b49872be4ed53<br><br>        Defendants. | Case No.: 4:25-cv-03097.<br><br>**EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ASSET FREEZE WITHOUT NOTICE AGAINST DEFENDANT CRYPTOCURRENCY WALLETS** |

    Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff LUAN PHAM DOAN, respectfully seeks the entry of a Temporary Restraining Order (TRO) against Doe Defendants 4-9. The requested TRO aims to freeze Plaintiff's assets that were transferred to cryptocurrency wallets owned and controlled by Doe Defendants 4-9 which are hosted by the Gate.io and OKX cryptocurrency exchange:

- **Gate.io Wallet Addresses:**
    o 0x14f97447e213fab6ad5e8e0a51a0c9930cdf1d4d

- o   0x89ec49a1a5dde8ce46a27da9f433d2eadfb4a179

- **OKX Wallet Addresses:**

  - o   0x8329dfed7ca686e1e4227af4491aa9fc92ed9dfe

  - o   0x3ec8ab0f225061fc963d4759fec5d5232ea049d3

  - o   0xAc51ffa7048190233dafc13ea5f6ff97205fccd1

  - o   0x559432e18b281731c054cd703d4b49872be4ed53

In support, Plaintiff alleges as follows:

## INTRODUCTION

This action arises out of an international internet-based fraud scheme perpetrated by Defendants through the use of fake cryptocurrency exchanges and social engineering (commonly known as "pig butchering" scams). Plaintiff was induced to transfer over **$10,000,000** (USD), of which at least **$6,000,000** has been traced to the wallet addresses listed above.

Defendants are actively laundering and dissipating the stolen funds. Immediate injunctive relief is essential to prevent irreparable harm by preserving the Plaintiff's ability to recover the misappropriated assets.

## FACTUAL BACKGROUND

Plaintiff Luan Pham Doan met Doe Defendant "1" a/k/a "TINA" who befriended Plaintiff online. After building trust, Doe Defendant "1" began discussing cryptocurrency trading with Plaintiff. Doe Defendant "1" claimed to be an expert in cryptocurrency investing and represented that she could help him earn high returns on cryptocurrency trading methods. She then introduced Plaintiff to a trading group on WhatsApp.[1]  At the direction of Doe Defendant "1," Plaintiff purchased cryptocurrency on legitimate cryptocurrency platforms Coinbase and Kraken. Plaintiff

---

[1] ECF No. 1 [Complaint], at ¶ 24

transferred the cryptocurrency to the malicious trading platforms accounts. The app was entirely simulated and served as a vehicle of theft for Defendants, giving them a mechanism to provide Plaintiff with false account statements that masked the fraudulent scheme Defendants were perpetrating.

Relying on the misrepresentations of Doe Defendant "1", Plaintiff Luan Pham Doan, under the guidance of Doe Defendant "1", registered accounts on Ablsursum.com and later on Odensa.com, both purported trading platforms which Plaintiff believed were legitimate cryptocurrency trading platforms. Plaintiff further believed that he controlled the cryptocurrency wallets held on these platforms.

Unbeknownst to Plaintiff, the trading platforms were fraudulent replicas of legitimate platforms; the wallets Plaintiff believed he controlled were, in fact, controlled by Defendants.[2] Plaintiff's transfers, made under the belief he was investing, were actually deposits into Defendants' private wallets.

Through blockchain analytics tracing,[3] it has become apparent that Defendants have stolen all of Plaintiff's crypto assets, and those assets have been transferred to cryptocurrency accounts under Defendants' sole control.

Plaintiff's stolen assets have been traced to the following cryptocurrency wallet addresses held at cryptocurrency exchanges Gate.io and OKX. These wallet addresses where Plaintiff's stolen assets currently sit are believed to be owned or controlled by Defendants and were used to launder the digital assets stolen from Plaintiff. The wallet addresses and values are set forth in the tables below:

---

[2] ECF No. 1 [Compl.], at ¶ 26.
[3] Tracing Report – CoinStructive – May 16, 2025

| No. | Gate.io | Funds Traced (ETH) | Funds Traced (USDC) | Funds Traced (USDT) |
|---|---|---|---|---|
| 1 | 0x14f97447e213fab6ad5e8e0a51a0c9930cdf1d4d | 1,950.5939 ETH | 49,890 USDC | 2,000,060.00 USDT |
| 2 | 0x89ec49a1a5dde8ce46a27da9f433d2eadfb4a179 | 0.7011 ETH | 0 | 0 |
|  | TOTAL | 1,951.2950 ETH | 49,890 USDC | 2,000,060.00 USDT |

| No. | OKX | Funds Traced (ETH) | Funds Traced (USDT) |
|---|---|---|---|
| 1 | 0x8329dfed7ca686e1e4227af4491aa9fc92ed9dfe | 20.0000 ETH | (0 |
| 2 | 0x3ec8ab0f225061fc963d4759fec5d5232ea049d3 | 30.0000 ETH | 0 |
| 3 | 0xac51ffa7048190233dafc13ea5f6ff97205fccd1 | 30.0000 ETH | 100,000 USDT |
| 4 | 0x559432e18b281731c054cd703d4b49872be4ed53 | 0 | 100,000 USDT |
|  | TOTAL | Total: 80.0000 ETH | 200,000 USDT |

As set forth in Plaintiff's Complaint, Defendants stole approximately $10,000,000 (USD).[4] Plaintiff tracked the cryptocurrency primarily to private wallets located at the Gate.io and OKX exchanges. Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendants' assets – including the Destination Addresses maintained by Defendants – to preserve the *status quo ante* pending the outcome of this litigation.

**LEGAL ARGUMENT AND AUTHORITIES**

**I.      Rule 65 Permits Entry of a Temporary Restraining Order Without Notice**

1.      Rule 65 permits this Court to enter a Temporary Restraining Order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that

---

[4] See Complaint ¶ 1.

immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition." Further, the movant's counsel must certify in writing "any efforts made to give notice and the reasons why it should not be required."[5]

2. As to the first prong of Rule 65(b)(1), the allegations contained in Plaintiff's Verified Complaint summarized and cited above and below, shows the likelihood of immediate and irreparable injury or loss. Plaintiff was victimized and robbed by Doe Defendant "1" a/k/a "Tina" who initiated the scam, Doe Defendant "2" who designed, created and controlled a malicious cryptocurrency trading platform called Ablsursum.com; Doe Defendant "3" who designed, created and controlled a malicious trading platform called "Odensa.com", and Doe Defendants 4-9 who maintain the deposit wallets where Plaintiff's stolen cryptocurrency were transferred.

3. By freezing Defendants' assets, Plaintiff will have a foothold in his arduous climb to recover his stolen cryptocurrency before Defendants can further transfer it beyond Plaintiff's reach.

4. With regard to the second prong of Rule 65(b)(1), a TRO is warranted without notice to Defendants. Defendants' proper legal names, addresses and locations are unknown. The only identifiable information Plaintiff has about the Defendants are the Destination Addresses. In a separate motion concurrently filed, Plaintiff seeks leave to serve the Complaint and Summons by alternative means – namely, by a non-fungible token ("NFT") – upon Defendants through the Destination Addresses where Plaintiff's stolen cryptocurrency is being held. At that point, Defendants will be apprised of the charges brought against them in this lawsuit so they may defend

---

[5] Fed.R.Civ.P. 65(b)(1)(B). *See also, Sun Commodities, Inc. v. Miami Produce Int'l Imp. & Exp., Corp.*, 2008 U.S. Dist. LEXIS 85192 (S.D. Fla. Oct. 7, 2008).

themselves against those charges, if they so choose. Notwithstanding the forgoing, Defendant scam artists have refused to cooperate or negotiate with Plaintiff. Notice of impending litigation and freeze requests have been communicated to the Gate.io and OKX exchanges, which generally notify the suspect users of the same.

5. Furthermore, Plaintiff certifies a deep concern that with each passing hour, Defendants will dissipate any traceable funds, either into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

## II.     The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief

6. Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc.*, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see also In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004) (citations omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id*. at 1085.

7. Here, Plaintiff seeks equitable relief in addition to his legal remedies and is entitled to an injunction to maintain the *status quo* until the claims in the Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges common law torts (conversion and

unjust enrichment) and requests relief in the following form of equity:

> "…equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendant "1" and/or JOHN DOES 1-11, in the identified cryptocurrency wallet addresses held at Bitkub, Binance, Blofin, and Tokenlon and further demands that the wrongfully obtained property be returned to Plaintiff." [6]

8. In disputes strikingly similar to the instant action, other courts have awarded the equitable relief sought by Plaintiffs here. *See Harris v. Upwintrade,* 1:24-cv-00313-MJT (E.D. Tex.) (Truncale, J.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case and noting "[i]n light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that the [Plaintiffs'] request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts considering similar circumstances"); *Lin v. Doe, et al.,* Case No. 2:23-cv-05878-GGG-KWR (E.D. La. Dec. 19, 2023) (converting TRO and issuing a preliminary injunction against multiple wallets where Plaintiff's stolen cryptocurrency assets were transferred); *Chow* v. *Defendant 1 et al.*, Case No. 2:24-cv-00480-DJP-DPC (E.D. La. July 25, 2025) (expanding Plaintiff's existing preliminary injunction to include newly identified wallet addresses where Plaintiff's stolen assets were transferred); *Yogaratnam v. John Doe*, Case No. 2:24-cv-00393-NJB-KWR (E.D. La. June 10, 2025) (*same*); *Phillips v. Defendant 1 et al.*, Case No. 2:24-cv-07511 (N.D. Il. March 19, 2025) (*same*); *Blum v. Doe, et al.,* Case No. 3:23-24734, (N.D. Fla. December 13, 2023) (granting emergency TRO without notice to Doe defendants in case nearly identical to present matter involving stolen cryptocurrency which were traced to the cryptocurrency exchanges MEXC, OKX, and HTX); *Ohlin et al v. Defendant 1 a/k/a "SELINA" et al,* Case no. 3:23-cv-08856, (N.D. Fla. May 26, 2023) (granting emergency TRO without notice

---

[6] *See* Complaint at ¶ 60.

to Doe defendants in case nearly identical to present matter involving stolen cryptocurrency which were traced to the cryptocurrency exchanges Binance, Gemini, and OKX); *Astrove v. John Doe*, Case No. 9:22-cv-80614, 2022 WL 2805315 (S.D. Fla. Apr. 21, 2022) (granting emergency motion for TRO without notice to John Doe defendant in case nearly identical to present matter involving stolen cryptocurrency which were traced to the cryptocurrency exchange Binance); *Martinangeli v. Akerman, LLP*, Case No. 1:18- cv-23607-UU, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) (entering TRO without notice to defendant whose assets were thereby frozen); *Heissenberg v. Doe*, Case No. 21-CV- 80716-ALTMAN/Brannon (S.D. Fla. April 23, 2021) at DE 14 (*same*); *Williams v. Doe*, Case No. 6:21- cv-03074-RK (W.D. Mo. Apr. 1, 2021) at DE 18 (*same*), copies of which are attached hereto as **Composite Exhibit "C"**.

9. Accordingly, Plaintiffs are entitled to a Temporary Restraining Order if the other requirements for a Temporary Restraining Order have been met. For the reasons described below, Plaintiffs are entitled to such relief.

10. Plaintiff also requests that the Court waive or otherwise limit to a de minimis amount any security associated with the issuance of this Temporary Restraining Order.

### III. A Temporary Restraining Order is Appropriate to Prevent Immediate and Irreparable Harm

11. The purpose of a preliminary injunction is to preserve the *status quo* and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017).

12. The movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

As shown below, Plaintiffs have satisfied each element of that standard.

A.  **Plaintiff has a Substantial Likelihood of Success on the Merits of His Claims**

13. The harms alleged in Plaintiff's Verified Complaint, make clear that Plaintiff was victimized by Defendants who, through actual fraud, misappropriation, conversion, theft, or other questionable means, obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

14. Based on that fraudulent behavior, Plaintiff has asserted claims for: (1) Racketeering in Violation of 18 U.S.C. § 1964(4); (2) conversion; and (3) unjust enrichment.

15. There is a substantial likelihood that Plaintiff will succeed on the merits of his case because this is a straightforward case of fraud and conversion with multiple Defendants comprising an enterprise engaged in the commission of wire fraud within the meaning of 18 U.S.C. § 1343. Furthermore, each and every transaction has been traced on the blockchain, providing Plaintiff and the Court with a definitive trail of Plaintiff's stolen assets.

16. Moreover, any and all cryptocurrency assets held in the Destination Addresses to which Defendants transferred any portion of the funds stolen from Plaintiff must be frozen and held in a constructive trust for Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.[7]

17. Considering the foregoing, there is a high likelihood that Plaintiff will succeed on his claims.

B.  **Plaintiff Will Suffer Irreparable Harm if Defendants are Not Enjoined**

---

[7] Texas generally recognizes the concept of constructive trust. *See generally Medford v. Medford,* 68 S.W.3d 242, 248 (Tex.App.-Fort Worth 2002, no pet.) *See also Troxel v. Bishop,* 201 S.W.3d 290, 297 (Tex.App.-Dallas 2006, no pet.)

18.     There is a significant risk that Defendants may dissipate the money stolen from Plaintiffs or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

19.     Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze Defendants' assets, including and specifically the aforementioned Destination Addresses, to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiff.

**C.    There is Little Prejudice to Defendants if the Temporary Restraining Order is Entered**

20.     While Plaintiff would be severely prejudiced if Defendants dissipate the funds wrongfully taken from Plaintiff, Defendants face no such prejudice. An order forbidding Defendants from moving Plaintiff's assets will, at worst, delay Defendants from shifting Plaintiff's stolen funds to an untraceable cryptocurrency account; and at best, will help maintain the *status quo* for Plaintiff to recover the valuable assets illegally obtained from Plaintiff.

**D. Entering a Temporary Restraining Order is in the Public Interest**

21.     The public interest strongly supports entry of a Temporary Restraining Order here.

22.     Moreover, entering a Temporary Restraining Order serves the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the stolen investor assets in this action.

**IV.    Plaintiff has No Adequate Remedy at Law**

23.     Plaintiff's only remedy to recover the funds fraudulently taken from him is through

his right to equitable relief in the form of enjoining asset dissipation by Defendants, beginning with an Order prohibiting Defendants from transferring or alienating the funds in the aforementioned digital wallets. Thereafter, there must be the imposition of a constructive trust to prevent the further dissipation of Plaintiff's assets. A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

## CONCLUSION

**WHEREFORE** Plaintiff, Luan Pham Doan**,** respectfully requests that this Court find Plaintiff has satisfied the elements for his claims for preliminary injunctive relief and enter a Temporary Restraining Order without notice to Defendants, freezing the assets located in the aforementioned digital wallets at the Gate.io and OKX exchanges where Defendants transferred Plaintiff's stolen assets and further restrain and enjoin the use, transfer, alienation, or dissipation of the cryptocurrency assets located therein. Such an order is necessary to preserve the *status quo ante* and protect Plaintiff pending the full adjudication of Plaintiff's claims.

Furthermore, Plaintiff respectfully requests that this Court waive or otherwise limit to a *de minimis* amount any security for issuance of this preliminary injunction.

Dated this September 15, 2025.              Respectfully submitted,

                                            By: */s/ Marshal J. Hoda*
                                            Marshal J. Hoda, Esq.
                                            Tx. Bar No. 24110009
                                            **THE HODA LAW FIRM, PLLC**
                                            3120 Southwest Fwy Ste. 101 PMB 51811
                                            Houston, TX 77098
                                            Telephone: 832-848-0036
                                            marshal@thehodalawfirm.com

and

/s/ *Reagan Charleston Thomas*
Reagan Charleston Thomas
LA Bar No. 38522
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ, PLLC**
Email: rthomas@awkolaw.com
17 East Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Facsimile: (850) 916-7449

*Attorney for Plaintiff*