Luan Pham Doan v. Doe Defendant "1" a/k/a "Tina", et al.

Case No.: 4:25-cv-03097

United States District Court – Southern District of Florida

Exhibit – Composite Exhibit "A"

Document list:

1. Exhibit A/1 - *Harris v. Upwintrade, 1*:24-cv-00313-MJT (E.D. Tex.) (Truncale, J.) (Aug. 8, 2024)……………………………………………………………………...Page 2

2. Exhibit A/2 - *Lin v. Doe, et al., Case No. 2:23-cv-05878-GGG-KWR (E.D. La. July 25, 2025)*)…………………………………………………………...............Page 20

3. Exhibit A/3 - Chow v. Defendant 1 et al., Case No. 2:24-cv-00480-DJP-DPC (E.D. La. July 25, 2025)……………………………………………………………Page 27

4. Exhibit A/4 - *Yogaratnam v. John Doe*, Case No. 2:24-cv-00393-NJB-KWR (E.D. La. June 10, 2025)……………………………………………………………Page 35

5. Exhibit A/5 - *Phillips v. Defendant 1 et al.*, Case No. 2:24-cv-07511 (N.D. Il. March 19, 2025)……………………………………………………………..Page 38

6. Exhibit A/6 - *Blum v. Doe, et al.,* Case No. 3:23-24734, (N.D. Fla. December 13, 2023)……………………………………………………………..Page 44

7. Exhibit A/7 - *Ohlin et al v. Defendant 1 a/k/a "SELINA" et al,* Case no. 3:23-cv-08856, (N.D.Fla. May 26, 2023)……………………………………..……...Page 53

8. Exhibit A/8 - *Astrove v. John Doe*, Case No. 9:22-cv-80614, 2022 WL 2805315 (S.D. Fla. Apr. 21, 2022) …………………………………………………..……...Page 62

9. Exhibit A/9 - *Martinangeli v. Akerman, LLP*, Case No. 1:18- cv-23607-UU, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) …………………………...…………….…...Page 71

10. Exhibit A/10 - *Heissenberg v. Doe*, Case No. 21-CV- 80716-ALTMAN/Brannon (S.D. Fla. April 23, 2021)………………………...………………………..……...Page 77

11. Exhibit A/11 - *Williams v. Doe*, Case No. 6:21- cv-03074-RK (W.D. Mo. Apr. 1, 2021) at DE 18…………………………………...…………………………..…….....Page 87

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| PETER HARRIS AND LONI HARRIS, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:24-CV-00313 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| UPWINTRADE.COM, A BUSINESS | § | |
| ASSOCIATION; DAVID SHAMLIAN, | § | |
| AN INDIVIDUAL; JOHN DOES 1 – 20, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER GRANTING PLAINTIFFS' MOTION FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY

Plaintiffs have filed an Emergency Motion for Emergency *Ex Parte* Temporary Restraining Order and Order Authorizing Expedited Discovery (the "Motion") [Dkt. 2], in which they seek an order requiring the freezing of the accounts associated with twenty-nine deposit addresses at four cryptocurrency exchanges and authorization to issue subpoenas to various third parties who they claim are likely to be in possession of information about the Defendants. The Court has reviewed Plaintiffs' Motion and supporting evidentiary materials. For the reasons set out herein, Plaintiffs' Motion is hereby **GRANTED**.

### I.    Background

Plaintiffs' relevant allegations are as follows. In February 2024, Plaintiff Loni Harris saw a Facebook post that appeared to be authored by a friend of hers from high school. ECF. 1, Verified Complaint (henceforth "Complaint"), ¶ 14. This post

alluded to the friend's recent financial successes, which had purportedly been achieved under the guidance of a person named "David." *Id.* Interested, Ms. Harris sent a message to the account that appeared to be operated by her old friend. *Id.* This person recommended that Ms. Harris contact one David Shamlian.[1] *Id.*

Ms. Harris reached out to Shamlian, who offered her his tutelage in cryptocurrency-related investment and trading. *Id.* at ¶ 15. Soon, Ms. Harris's husband, Peter Harris, connected with Shamlian as well. *Id.* Shamlian told the Harrises that in order to take advantage of his proprietary trading strategies, they would need to make an account on a cryptocurrency-trading platform called Upwintrade. *Id.* The Harrises soon did so. *Id.*

Over the course of the next several months, Shamlian 'trained' the Harrises in the process of using the Upwintrade platform. *Id.* at ¶ 16. First, he instructed them to make their own accounts at well-established cryptocurrency exchanges, which they did. *Id.* They then deposited their own U.S. Dollars into those accounts, which they used to buy Bitcoin. Then, following Shamlian's instructions, they would transfer their Bitcoin to "deposit addresses" provided to them on the Upwintrade platform. *Id.* They repeated this process in a series of transactions from February to May 2024, ultimately transferring Bitcoin with transfer-date value of more than $650,000.00 to the addresses provided to them by Upwintrade. *Id.*

---

[1] The Harrises allege that they later confirmed that this account was not created by Loni Harris's friend, but was instead a fraudulent account impersonating that friend without his knowledge. *Id.*

Each time the Harrises made a 'deposit' to their Upwintrade account, the account balance presented in their user portal increased as expected. *Id*. In other words, the platform appeared to be working, from their perspective. And in fact, just as Shamlian had promised, their balance began to grow rapidly as they profited from his strategies and Upwintrade's purportedly advanced technology. *Id*. at ¶ 17.

Then, in May 2024, the Harrises decided to withdraw some of their assets from Upwintrade. *Id*. But they were told they could not make a withdrawal until they paid hundreds of thousands of dollars in "taxes" to "release" their account. *Id*. The Harrises began to suspect that they had been the victims of a scam and retained counsel. *Id*. Despite their repeated entreaties, Upwintrade never returned their assets. *Id*.

The Harrises now allege that Upwintrade's explanations as to why they could not withdraw their funds were lies. *Id*. at ¶ 18. They say the real reason Upwintrade would not return their assets is that Upwintrade is not a trading platform at all. *Id*. Instead, they claim that they have been the victims of a "pig-butchering scam" operated by the Defendants. *Id*. at ¶ 4. According to the Harrises, this is a type of investment scam in which the perpetrators deceive victims into depositing their assets on a fake-but-realistic-looking "trading" or "investment" platform where no trading or investment ever occurs. *Id*. Instead, the Harrises allege, the assets are simply stolen. *Id*.

Evidentiary materials submitted by the Harrises suggest that these kinds of investment scams are now amongst the most prevalent forms of cybercrime

worldwide. ECF No. 2, Ex. 1-C, Affidavit of Evan Cole (henceforth "Cole Affidavit") (providing excerpts from FBI Internet Crime Report). These materials also show that the Harrises' experience is very similar to the experiences of other pig-butchering victims described in journalistic outlets and law-enforcement reports. *Id.*, Exs. 1-A (article describing typical pig-butchering scam), 1-B (Secret Service Bulletin describing pig-butchering scams), 1-C (excerpts from FBI Internet Crime Report).

After retaining counsel, the Harrises engaged an investigator to perform a "blockchain tracing" report. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. Cole Affidavit at ¶ 7. The Harrises' investigator was able to trace their stolen assets to addresses associated with four distinct cryptocurrency exchanges: (1) Binance, (2) Revolut, (3) Remitano, and (4) ByBit. *Id.* at ¶¶ 8 - 12. In the instant Motion, the Harrises ask the Court to order that these exchanges temporarily freeze the accounts associated with the blockchain addresses they have identified as receiving the assets stolen from them, so that they might preserve some assets for recovery.

In addition, by investigating Upwintrade.com and David Shamlian's personal website, the Harrises have identified several additional third parties they claim are likely to be in possession of information about the Defendants. These third parties include, for example, the companies these websites used for web hosting and live-chat functionality. The Harrises' Motion seeks to issue subpoenas to these third parties, in addition to the four cryptocurrency exchanges mentioned above, with the

aim of revealing the Defendants' true identities and unearthing contact information that they might subsequently use to serve or otherwise communicate with them.

## II.    Analysis

The Harrises have met the requirements for issuance of a temporary restraining order and expedited discovery for the following reasons.

### A.    Temporary Restraining Order

The standard for issuance of an *ex parte* temporary restraining order has both procedural and substantive elements. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." FED. R. CIV. P. 65(b)(1)(A)-(B).

Both requirements are met here. The Harrises' Verified Complaint and the Cole Affidavit show the likelihood of immediate and irreparable injury or loss. These materials suggest that the Harrises were in fact the victims of a prevalent form of cybercrime—the "pig-butchering scam"—which features well-established and recognizable patterns of deception. *See* Complaint, ¶¶ 14 – 19; Cole Affidavit, ¶¶ 3 – 5 (concluding that the Harrises were the victim of a pig-butchering scam and providing news reports and law-enforcement bulletins for comparison). The Cole Affidavit further details how the assets allegedly stolen from the Harrises could be further transferred to unretrievable locations at any time, with the click of a button.

Cole Affidavit, ¶ 13 (explaining that "crypto assets can be moved in seconds from address to address," and that the Harrises will be unlikely to recover their assets if they are further dissipated). Several federal courts have found that this exigency justified issuance of *ex parte* restraining orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[2]

In addition, the Harrises attorney has certified why notice should not be required. As the Harrises point out in their Motion, the Court has the authority to enter an *ex parte* order not only where notice to the adverse party is impracticable, but where "notice to the defendant would render fruitless [the] prosecution of the action." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). Under this logic, courts have found that notice of an asset-freeze motion is not required if the parties to be enjoined "are likely to dissipate assets and destroy business documents," such that the very act of providing notice would

---

[2] *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

"cause immediate and irreparable injury or damages to the Court's ability to award effective final relief." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Several courts have found that this same reasoning justified issuance of *ex parte* freezing orders in crypto-fraud cases analogous to this one.[3]

Here, the thrust of the Harrises' allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority. While at this stage these are simply allegations, the Harrises have provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets if they were given notice of this motion. This is sufficient to justify issuance of an *ex parte* order under these unique circumstances.

Having found that the procedural requirements for issuance of an *ex parte* restraining order are met, the Court now turns to the substantive standard. To obtain a temporary restraining order, a movant must show (1) a substantial

---

[3] *See, e.g.*, *Gaponyuk v. Alferov*, No. 223CV01317KJMJDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

The Harrises have met each of these requirements. On the merits, the Harrises make claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. Complaint, ¶¶ 21 – 32. They have alleged and provided evidence that the Defendants deceived them and misappropriated their assets in what appears to have been an intentional pig-butchering scam. Complaint, ¶¶ 1 – 4, 14 – 19; Cole Affidavit, ¶¶ 3 – 5. The Court finds, at this stage, that the similarities between Plaintiffs' allegations and the widely known characteristics of this distinctive kind of scam suggest that they will indeed be able to prevail on these claims against the Defendants once a full evidentiary record is developed. In addition, the Court notes that asset freeze the Harrises seek in this instance is permissible in light of their request for a constructive trust over specific, traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO

where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

The Harrises have also shown that irreparable harm will ensue absent the restraining order they seek, for the same reasons explained above. In light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that the Harrises' request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts considering similar circumstances. *See Jacobo*, 2022 WL 2052637, at *3.

Next, the Court finds that the threatened injury to the Harrises outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. Maintaining the assets at the destination accounts is perhaps the Harrises' only realistic chance at a future recovery in this case. In contrast, as other courts have reasoned, the Court finds that the Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

Finally, the Court finds that issuing the injunction is in the public interest. The Harrises have adduced evidence showing that they are but two of many victims

of what appears to be an epidemic of similar scams. Cole Affidavit, ¶¶ 3 – 5 (describing pig-butchering scams as "epidemic" and providing law-enforcement and academic materials suggesting that Americans have lost billions to such scams). A freezing order will serve the public interest here both by dissuading would-be fraudsters from preying on American citizens, and providing assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6; *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

## B. Expedited Discovery

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)." FED R. CIV. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order." *Id*. Courts in this circuit apply a "good cause" standard to determine whether such an order should issue. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (applying good cause standard). Good cause may be found where "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*. at 239.

Courts have authorized expedited discovery from cryptocurrency exchanges in cryptocurrency-related fraud cases like this one. *See, e.g.*, *Strivelli v. Doe*, No. 22-cv-22060 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (authorizing expedited discovery from cryptocurrency exchanges in crypto case and noting "the Court's

review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to ascertain the identity of John Doe defendants"); *Licht v. Ling*, No. 3:23-cv-1018, 2023 WL 4504585 (N.D. Tex. June 20, 2023), at \*4 (issuing broad authorization for expedited discovery in analogous crypto-fraud case and requiring that "any party served with a request for production shall produce all requested items within 72 hours of the request"). Indeed, in similar cases, courts have held that any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them. *Gaponyuk*, 2023 WL 4670043, at \*4 (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information").

Here, the Harrises' proposed discovery arises from their pre-suit blockchain tracing and investigation of the Defendants' web properties. These investigations revealed a series of third parties likely to be in possession of information about the Defendants. Each of those third parties and their connection to this case is set out below.

| Subpoena Target | Alleged Connection to Case | Evidence |
|---|---|---|
| Microsoft Corporation | Microsoft owns Skype, the messaging app the Harrises allege they used to communicate with Shamlian. | Exhibit 1-H |

| | | |
|---|---|---|
| Meta Platforms, Inc. | Meta owns Facebook, where the alleged deception at issue in this case began and where the Harrises communicated with the defendants. | Exhibit 1-I |
| SRS AB | The Harrises have submitted evidence showing that SRS AB is the domain registrar for Upwintrade.com. | Exhibit 1-J |
| Mastercard Inc. | The Harrises have submitted evidence showing that, at some point, a Mastercard payments processing tool was installed on the site. | Exhibit 1-K |
| Visa Inc. | The Harrises have submitted evidence showing that, at some point, a Mastercard payments processing tool was installed on the site. | Exhibit 1-K |
| Data Room, Inc. | The Harrises have submitted evidence showing that Data Room provided the U.S.-based servers from which the Defendants operated upwintrade.com. | Exhibit 1-J |
| LLC Technology Distribution Ltda | The Harrises have submitted evidence showing that entity owns and operates JivoChat, a live-chat plugin that the Defendants used to communicate with victims on Upwintrade.com. | Exhibit 1-L |
| Wild West Domains, LLC | The Harrises have submitted evidence showing that this entity is the domain registrar for davidshamlian.com, the personal website of David Shamlian. | Exhibit 1-M |
| OrangeHost LLC | The Harrises have submitted evidence showing that this entity provides web-hosting services for davidshamlian.com. | Exhibit 1-M |
| Elementor Ltd. | The Harrises have submitted evidence showing that the Defendants used the Elementor site-building tool to build the website at davidshamlian.com. | Exhibit 1-N |

| | | |
|---|---|---|
| Binance, Ltd. | The Harrises allege that a significant portion of the cryptocurrency the Defendants stole from them was ultimately deposited in accounts at the Binance cryptocurrency exchange. | Exhibit 1-F |
| Revolut Technologies, Inc. | The Harrises allege that a significant portion of the cryptocurrency the Defendants stole from them was ultimately deposited in accounts at Revolut, which is a "neo-bank" that offers both crypto- and fiat-denominated accounts. | Exhibit 1-F |
| Babylon Solutions Limited | This entity owns and operates the peer-to-peer cryptocurrency exchange Remitano. The Harrises allege that a significant portion of the Bitcoin that the Defendants stole from them was ultimately transferred to Remitano accounts. | Exhibit 1-F |
| Bybit Fintech Limited | The Harrises allege that a significant portion of the Bitcoin that the Defendants stole from them was ultimately deposited in accounts at the Bybit cryptocurrency exchange. | Exhibit 1-F |

The Harrises request the Court's authorization to issue subpoenas to each of the above-listed entities seeking the following information. For all targets, the Harrises seek to discover all biographical and contact information associated with the Defendants' accounts. They also seek to discover IP-address and location logs showing the devices and locations from which the Defendants accessed these accounts.

The Harrises also seek to discover any payments information in the subpoena targets' possession, including the Defendants' transaction histories and information

- 13 -

about the credit or debit cards the Defendants used to pay for the subpoena targets' services. As to the Defendants' payment methods, the Harrises seek only information sufficient to identify the Defendants' payments provider and the Defendants' account with that provider.

Finally, as to the firms to which the Harrises' stolen assets were transferred—*i.e.*, Binance, Revolut, Bybit, and Remitano—the Harrises seek to discover the current account balances associated with the Defendants' accounts, their transaction histories, and identification of any other accounts on the respective platforms associated with the accountholders by re-use of biographical or contact information.

Courts have authorized similar discovery where the plaintiff adduced evidence that the persons about whom the information was sought were cybercriminals and the plaintiff also sought a temporary restraining order freezing the assets held in those accounts. *Strivelli*, 2022 WL 1082638, at *2 (granting broad expedited discovery in analogous crypto-fraud case); *see also Licht*, 2023 WL 4504585, at *4 (same). The Court finds these courts' reasoning persuasive, and therefore authorizes the scope of discovery requested by the Harrises here.

### III.   Relief Granted

#### A.   Restraining Order

The Plaintiffs have submitted evidence tracing the assets they allege were stolen from them to 29 deposit addresses at the cryptocurrency exchanges Binance,

Revolut, Remitano, and ByBit (the "Receiving Addresses"). The Receiving Addresses are:

| Exchange | Address |
|----------|---------|
| Binance | 13mLDAfVfyzD8Vf6x9YZ5pALc3g8TXqPix |
| Binance | 1MUxDUmHAVskKATJDCWgk8SJ9ZBHreZAbh |
| Binance | 1DMhMwn4apg49oVjRpbaZqJDDLJaN6iqox |
| Binance | 13WWx7qQ1QBoY2E3sjaRrzvWzg2JJkDAgg |
| Binance | 1PvjGd7aCpvRzZtz4kL9YgdvnYPdpm16oj |
| Revolut | bc1q7gku9m33re89mes97dwq4lawwxg3hj6g28umcy |
| Remitano | 38ZWvd5Be2PqMu5xcvy9PY3T4frKvniNyf |
| Remitano | 38Ep5mFzh6oNbuFXSL1Hvk3g1TwXUMX8xv |
| Remitano | 3M5RWiGdcEDRseLUqaG15HgPLL7bf3644A |
| Remitano | 3A34Ggh1EUNXe4K8ayTLNLdKYAUDTnEU63 |
| Remitano | 3MoVdQzjhYJrz9umg4v1oBRRz5pe9kZVcu |
| Remitano | 3A3NqjhLiexUzcfgGuVo19uzux8rnbqSVE |
| Remitano | 3CaPngqFGiu8kSLEcp9uM5JvK97RdAGHBU |
| Remitano | 3KE6diBJr2yCcd9HEUxH5KNd86s2tzPW2N |

| Remitano | 3B9GDHG6WgrWeavz247zAvbd5WrC8rYF7y |
|----------|-------------------------------------|
| Remitano | 3KKGPBqG2GW5PNVmktjoJwsSoGmfrvVTBB |
| Remitano | 3G1gfTQn81jgaPUCWCoSr8j17AtiWn17uy |
| Remitano | 3DGPG9Lh6iLSkxYf9UZxzxjcUKo36xUva9 |
| Remitano | 3D8JCs231iJxK8Jx86pJ4TAWrAAtbRxRPW |
| Remitano | 33heGnSTbA6U7WrfMBYoWYgCRBek2MrKTA |
| Remitano | 3AymDrgNq3WQZaNLh4vxLe8bxVzGaHqQhz |
| Remitano | 31jJbyCxErbbfkuGP1dtz2Pz9jt9SWNv83 |
| Remitano | 35wtpq7h7AjMP2xaS9yNa8T9cgJfUUm5RW |
| Remitano | 3BjbZnAwmmxvQFnibcyGRd8SAwM6xTLYpA |
| Remitano | 3CZ6NHrctR8ceWwyYyJQXP96PMAqEs5J4a |
| Remitano | 3KSpJdiRmej8XkqCYswa58pff127b7nQxc |
| Remitano | 39TPPnjRGB8ANVbs1K7RFoBBDNtvXWtECj |
| ByBit | 1HyTkypyP8yoRGSRrvr74SyEhhX1bkLMiQ |
| ByBit | 14rxMsRQV5fkTDb3ShorD91xQvdwp34hjb |

For the reasons set out in the Motion, the Court finds that the accounts associated with these deposit addresses should be frozen. Accordingly, the Court

- 16 -

hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed Receiving Addresses, or any business entity through which they act or which acts in active concert or participation with them; including those assets currently held at or for the Receiving Addresses.

In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiff.

### B. Expedited Discovery

The Court finds that Plaintiffs' request to issue expedited discovery should be granted for the reasons set out above. Plaintiffs are authorized to serve subpoenas on the third parties identified above. In light of the time-sensitivity of Plaintiffs' subpoenas to the cryptocurrency exchanges to which their assets were ultimately transferred, Plaintiffs are authorized to serve this Order on these exchanges via email directed to the following addresses:

| Recipient | Service Address |
|---|---|
| Binance, Ltd. | legal@binance.com<br>compliance@binance.com |
| Revolut Technologies, Inc. | legal@revolut.com<br>compliance@revolut.com |
| Babylon Solutions Limited | legal@remitano.com<br>compliance@remitano.com |
| ByBit Fintech Limited | legal@bybit.com<br>compliance@bybit.com |

All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiffs' counsel within seven (7) days of their receipt of Plaintiffs' subpoena and this Order.

The Court finds that any privacy interest the Defendants have in the documents requested by Plaintiffs is outweighed by the need to investigate and prosecute the theft and conversion alleged in the complaint. Such privacy concerns shall not be good cause for the subpoenaed party to withhold the requested material.

**SIGNED this 8th day of August, 2024.**

*Michael J. Truncale*

Michael J. Truncale
United States District Judge

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| YANGJING LIN <br><br> Plaintiff, <br><br> v. <br><br> DEFENDANT "1" a/k/a "Fanxin Lin" and JOHN DOES 1-20, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations, <br><br> Defendants. | CASE NO. 2:23-cv-05878 <br><br><br> **SECTION T(4)** |

## TEMPORARY RESTRAINING ORDER

The Court has before it an Emergency Motion filed by Plaintiff Yangjing Lin for a Temporary Restraining Order ("TRO") against Defendant "1" a/k/a/ "Fanxin Lin" and other unidentified accomplices John Does 1–20 (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 65(b). R. Doc. 8. Plaintiff asks the Court to immediately freeze cryptocurrency assets located in several digital wallets, which Plaintiff asserts can be traced to assets stolen from him by Defendants, to preserve the *status quo ante* and prevent those assets from disappearing during the pendency of this action. Having considered Plaintiff's Motion and the applicable law and facts, the Court finds Plaintiff has met the requirements of the issuance of an *ex parte* TRO and will thus GRANT Plaintiff's Motion.

## I.    BACKGROUND

Plaintiff alleges Defendants fraudulently enticed him into transferring approximately $2,592,728.73 worth of cryptocurrency into Defendants' cryptocurrency wallets in the guise of

1

legitimate cryptocurrency investments. R. Doc. 4 at 2–5. Plaintiff does not know the true identities of Defendants but believes them to be in China based on their banking information. *Id.* at 2. Through blockchain analytics tracking, Plaintiff has identified the following crypto currency wallet addresses believed to be owned or controlled by Defendants what were used to launder the digital assets stolen from Plaintiff:

| No. | Crypto.com Destination Address | Funds Traced (USDT) |
|---|---|---|
| 1 | 0xd43922f84e51746756d7264d387f307a6b75eba7 | 395 |
| 2 | 0x465ba0bb70a78e5dc25baa62248b8523c0ad6b29 | 2,247 |
| 3 | 0x446d8a42d8cb24f6e366a08803b9d0d106fcec86 | 6,088 |
| 4 | 0x76b6866da951ec578c619eca8a4a7c0b882d3790 | 495 |
| | | Total: 9,225 |

| No. | OKX Destination Address | Funds Traced (USDT) |
|---|---|---|
| 1 | 0xCEB2FB9536117cFa733f6886d5aa7DB74f9AFA0b | 312,418 |
| 2 | 0xeA1115C449f80cff9b9524A6915E5C055ADe4D15 | 26,498 |
| 3 | 0x934408dE638f14AD72C68cb59917D8b22a1375Ff | 88,585 |
| 4 | 0x39243D72D9c26d26bd8317838908e7F2682aF284 | 39,291 |
| 5 | 0x70999b0Eba35Bb33Bdea19bBe33EB078998811A2 | 84,566 |
| 6 | 0x09BD238e011CcE1Bd3ec14F1addBd6a00980dB90 | 57,084 |
| | | Total: 608,442 |

| No. | Binance Destination Address | Funds Traced (USDT) |
|---|---|---|
| 1 | 0x9830990033963788C1556cB8577B93De2e376110 | 2,455 |
| 2 | 0x6f4154A1de594f7EB97a42070f0D8237f596a66F | 53,159 |
| 3 | 0xC73a403D83abd1B27C1b53eCb0E64CAD8C0B2DD3 | 40,933 |
| 4 | 0x00adC74eca60bc8570fBfbf2Ae0001bdBA9987d1 | 107,905 |
| 5 | 0xa14E0972a9D1ecdd7B8eb3be27b3901EBB24518f | 34,314 |
| 6 | 0x6bB2aE61c309507B2F6Acb05b6887e1aB5e1FEf3 | 12,103 |
| 7 | 0x0351431b3c4aedFd07bab45CFd7552ed315E9CdD | 69,000 |
| 8 | 0xaF9e1FF950337CB623A12467301d63c3ce803005 | 29,715 |
| 9 | 0x37c62861E20eCDA9e1c903138648f6047fB42149 | 50,000 |

2

| No. | Binance Destination Address | Funds Traced (USDT) |
|-----|------------------------------|---------------------|
| 10 | 0x3dEAda25Fda9004587189871F8C7D2cb8C9F422CD1c | 73,468 |
| 11 | 0x5F0dC420Af73a5FCD8d3Baa07a08750F58441D66 | 87,562 |
| 12 | 0x546b8bee3841f71818A530203E3271480770ed35 | 58,568 |
| 13 | 0x1ECA2e8b64dAa1eD8BCeDD0472A179BeAfF7c2ed | 143,617 |
| 14 | 0x47328E683944b0D94f5346bE0F075F0C31C4DE1f | 27,194 |
| 15 | 0xEaE73F3C605c560c65eb6B37518a2900c3f6fDAD | 74,296 |
| | | Total: 864,289 |

| No. | FTX Destination Address | Funds Traced (USDT) |
|-----|-------------------------|---------------------|
| 1 | 0x4ffc387bc666786766e98e3722fd56fcdb4704b3 | 4,950 |
| 2 | 0x3d7a3347251ffb933f7ebdf3572cc9a17ff7ab5f | 28,800 |
| 3 | 0xcfcda50e5f65788156d21fe919eb9ee933b0f2c4 | 28,531 |
| 4 | 0x39f5020d9ccdb996f183dfd054d69c5fb5c08f5f | 142,379 |
| | | Total: 204,660 |

| No. | MaskEX Destination Address | Funds Traced (USDT) |
|-----|-----------------------------|---------------------|
| 1 | 0x23345502a6AC542C888255dA9d0D06B39Ab7F100 | 167,935 |

| No. | Bitazza Destination Address | Funds Traced (USDT) |
|-----|------------------------------|---------------------|
| 1 | 0x58cabef14cdb0201ac104d6ded8f937f97dd71ff | 183,635 |

| No. | Gate.io Destination Address | Funds Traced (USDT) |
|-----|------------------------------|---------------------|
| 1 | 0xea44F386ad8983DBb29A21b76b958695e4dd8BFF | 11,358 |
| 2 | 0xD006275fF6969d190aa4bF1eDD03A1d2b1180529 | 42,099 |
| | | Total: 53,457 |

| No. | Dormant Wallet Address | Asset | Balance[9] | Amount (USD) |
|-----|------------------------|-------|-----------|--------------|
| 1 | 0xe63293363c2125eba7d51910ae64d480cc05b13b | ETH | 0.094 | 177.96 |
| | | USDT | 1,035,061 | 1,035,061 |

Plaintiff asks the Court to freeze the asserts contained in the cryptocurrency wallet addresses identified above (the "Destination Addresses"). R. Doc. 8 at 3–5. As Defendants are unidentified, they have not yet been served or notified of Plaintiff's Motion for a TRO.

## II.  LAW AND ANALYSIS

Under Rule 65(b)(1), courts may enter a TRO without notice to adverse parties only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney has "certifie[d] in writing any efforts made to give notice and the reasons why it should not be required." Plaintiff asserts that, due to the nature of cryptocurrency, which allows for essentially instantaneous and often untrackable transfers of digital currency, a TRO is necessary in this case to prevent Defendants from transferring his allegedly stolen assets from the Destination Addresses to other unreachable or unidentifiable digital wallets. R. Doc. 8 at 5–6. Plaintiff has also submitted the affidavit of a forensic investigator in cryptocurrency tracking, who explains, based on his experience, that "if [the Destination Addresses] are not frozen, it is very possible the individuals who stole these assets could move them to a foreign exchange or even worse, a cold wallet, which would prevent Plaintiff from recovering [his] stolen cryptocurrency, causing significant, irreparable harm." R. Doc. 8-2 at 6. Additionally, Plaintiff argues notice to Defendants should not be required for the issuance of this TRO because they are unknown and identifiable at this stage only by the Destination Addresses.

Based on these facts, the Court finds that immediate and irreparable harm to Plaintiff will result should the Court require notice to Defendants of Plaintiff's Motion for a TRO. Plaintiff's potential recovery of assets will disappear if Defendants transfer the allegedly stolen assets into inaccessible digital wallets, which could occur at any moment, and the likelihood of that

occurrence would be significantly raised should the Court require Defendants to be notified of Plaintiff's Motion prior to the issuance of a TRO. Other courts have also entered TROs without notice in similar circumstances involving cryptocurrency assets. *See, e.g.*, *Ohlin et al. v. Defendant 1 a/k/a "SELINA" et al.*, Case No. 3:23-cv-08856, (N.D. Fla. May 26, 2023); *Astrove v. John Doe* ,2022 WL 2805315 (S.D. Fla. Apr. 21, 2022); *Martinangeli v. Akerman, LLP*, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018). Accordingly, Plaintiff has met the procedural requirements for the issuance of an *ex parte* TRO, provided he is entitled to a TRO in this matter.

To show entitlement to a TRO, a movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

Here, Plaintiff has shown a substantial likelihood of success on the merits of his claims against Defendants conversion and unjust enrichment by fraud. Plaintiff has alleged and provided evidence that Defendants acquired Plaintiff's assets fraudulently and have no legitimate claim to them. As discussed *supra*, there is a substantial threat of irreparable harm to Plaintiff if Defendants are not immediately enjoined from transferring the allegedly stolen assets out of the Destination Accounts. Considering the speed with which cryptocurrency transactions are made and the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of those funds. The threatened injury to Plaintiff if these funds are dissipated outweighs any harm Defendants may suffer from a temporary inability to move assets they do not appear to have a right to possess. Finally, granting a TRO in these circumstances is in the public interest because it will promote the rule of law and provide assurance

that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets. Accordingly, Plaintiff is entitled to a TRO freezing the assets in the Destination Addresses.

## III.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's *ex parte* Emergency Motion for a Temporary Restraining Order, R. Doc. 8, is **GRANTED** and a temporary restraining order is entered as follows:

1.  Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held in the Destination Addresses.

2.  Notice was not provided to Defendants prior to issuance of this Order for the reasons stated above.

3.  In the discretion of this Court, the requirement that Plaintiff post security pursuant to Rule 65(c) is waived. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

4.  This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless the Court extends this Order upon a showing of good cause or Defendants consent to its extension for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

6

5. A hearing to determine whether to convert this temporary restraining order into a preliminary injunction is set for December 12, 2023, at 10:00 A.M. in the Courtroom of the Honorable Judge Greg G. Guidry.

New Orleans, Louisiana, this 5th day of December, 2023, at 2:00 P.M.

_____
Greg Gerard Guidry
United States District Judge

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VIRGINIA S. CHOW** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-480** |
| **"DEFENDANT 1" a/k/a KAI XUAN WANG, ET AL.** | **SECTION: "P" (2)** |

## <u>ORDER AND REASONS</u>

Having held a preliminary injunction hearing (*see* R. Doc. 48), and for the reasons explained by the Court in its Order and Reasons issuing the temporary restraining order (*see* R. Doc. 12.), the Court finds that Plaintiff, Virginia Chow, has met the requirements for a preliminary injunction in this matter.[1]

As stated on the record at the preliminary injunction hearing, Plaintiff moves for injunctive relief only as to the HTX and Binance wallet addresses.

Accordingly,

**IT IS ORDERED** that a preliminary injunction is issued as follows:

1. Defendant and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he acts or who acts in active concert or participation with Defendant, who receive actual notice of this Order and Reasons by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held in the following cryptocurrency wallet addresses:

    **Binance:**
    0xc8121243a24b110a369bd15ced93d1ed1339b608
    0x848c23684c817a8c4351ab903cb33b30fc8fa761

---

[1] *See* FED. R. CIV. P. 65.

**HTX**:
0x4e74dc7dbcda607ed4c019a7ea155db12111ef48

2. In the Court's Order and Reasons granting the temporary restraining order (R. Doc. 12), the Court determined that security in the amount of $100 is appropriate. The record does not reflect that this sum has been deposited with the Court. Therefore, Ms. Chow is directed to post security of $100 with the Clerk of Court. No additional security shall be required.[2]

3. This preliminary injunction shall remain in effect until the Court's entry of a final judgment on the merits of Ms. Chow's claims in this action unless otherwise ordered by the Court.

New Orleans, Louisiana, this 24th day of July 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[2] See *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 612 (5th Cir. 1985).

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VIRGINIA CHOW** | **CIVIL ACTION NO: 24-CV-480** |
| **VERSUS** | **JUDGE DARREL JAMES PAPILLION** |
| **"DEFENDANT 1"** | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

## ORDER AND REASONS

Before the Court is an Emergency Motion for Temporary Restraining Order ("TRO") filed by Plaintiff Virginia S. Chow ("Plaintiff"). R. Doc. 9. For the reasons assigned below, Plaintiff's motion is **GRANTED**.

## BACKGROUND

On February 24, 2024, Plaintiff filed suit in this Court alleging an individual Plaintiff identifies as "Defendant '1'" deceived Plaintiff into transferring approximately $380,000 worth of cryptocurrency into his private cryptocurrency wallet addresses (the "Destination Addresses"). R. Docs 1 and 11. Plaintiff alleges she met Defendant 1 online in August 2021, and Defendant 1 misrepresented that he would teach Plaintiff how to successfully trade cryptocurrency. R. Doc. 11 at ¶ 18. Defendant 1 represented to Plaintiff that he was using various websites allegedly owned and operated by Coinbase, a decentralized perpetual exchange used to trade cryptocurrencies. *Id.* at ¶ 20. Apparently, these websites were not associated with Coinbase and instead were fraudulent copycat websites used to deceive individuals "into believing they were investing on a legitimate cryptocurrency exchange owned and operated by Coinbase." *Id.* at ¶ 22. Plaintiff alleges she made a total of eleven transactions from her cryptocurrency accounts into the Destination Addresses and has since been unable to access her assets. *Id.* at ¶ 26, 33, 35. Plaintiff has retained

CNC Intelligence, a forensic cryptocurrency tracing company, which has traced Plaintiff's assets to accounts believed to be under the control of Defendant 1. *Id.* at ¶¶ 34-36.

April 4, 2024, Plaintiff filed an Amended Complaint asserting claims for (1) conversion; (2) unjust enrichment; (3) imposition of constructive trust and disgorgement of funds; and (4) conspiracy under state law. R. Doc. 11. On April 5, 2024, Plaintiff filed this motion for a TRO, which the Court deferred ruling on until Plaintiff properly alleged federal jurisdiction. Plaintiff filed a Second Amended Complaint on April 15, 2024. R. Doc. 11. Satisfied that Plaintiff has met her burden to establish diversity jurisdiction, the Court now turns to the motion.

## LEGAL STANDARD

To be entitled to a TRO, the plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not do disservice to the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Injunctive relief is an extraordinary remedy and, thus, the moving party must "clearly carr[y] the burden of persuasion on all four elements." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotations and citations omitted).

In addition to the aforementioned factors, a TRO without notice to the adverse party may be issued only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1)(A)-(B). A TRO issued without notice likewise "must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued

without notice; and be promptly filed in the clerk's office and entered into the record." FED. R. CIV. P. 65(b)(2). The TRO "expires at the time after entry—not to exceed 14 days—that the court sets." *Id.*

## ANALYSIS

Plaintiff succeeds on all requisite elements for a TRO. First, Plaintiff has shown a substantial likelihood of success on the merits of her conversion claim. To succeed on a conversion claim under New York law,[1] Plaintiff must show her possessory right or interest in the property and Defendant 1's dominion over the property or interference with it, in derogation of her rights. *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 42, 49-50 (N.Y. 2006). Plaintiff has alleged facts and produced evidence suggesting that she transferred approximately $380,000 into Defendant 1's private cryptocurrency wallet address. R. Doc. 11 at 30. The record indicates Defendant 1 has no right to these assets, and that Plaintiff's inability to access these funds constitutes interference with Plaintiff's property.[2] *Id.*

Second, Plaintiff has shown she will suffer irreparable harm absent a TRO. Plaintiff's potential to recover her assets almost certainly disappears if Defendant 1 transfers the allegedly stolen cryptocurrency into inaccessible digital wallets. And because of the anonymity and speed at which cryptocurrency transactions have the potential to be made, a TRO is necessary to prevent Defendant 1 from transferring Plaintiff's allegedly stolen assets into unreachable or unidentifiable digital wallets. *See, e.g., Astrove v. Doe*, No. 22-CV-80614, 2022 WL 2805313, at *3 (S.D. Fla. Apr. 22, 2022).

---

[1] Plaintiff alleges New York state law applies because Plaintiff lives in New York; the acts giving rise to this action occurred in New York; and New York policies are most impaired if its law is not applied. R. Doc. 9 at ¶ 16 n.13.

[2] Even if Louisiana law applies in this case, Plaintiff has established a substantial likelihood of success on the merits of his conversion claim. *F.G. Bruschweiler Antiques, Ltd. v. GBA Great Brit. Antiques, LLC*, 860 So.2d 644, 649-50 (La. App. 5 Cir. 2003) (explaining that under Louisiana law, conversion occurs "when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's right").

The third and fourth factors likewise weigh in favor of a TRO. As to the third factor, the balance of hardships favors Plaintiff. Absent a TRO, Plaintiff runs the risk of permanently losing hundreds of thousands of dollars. While the Court is sensitive to the potential inconvenience of hardship this action may impose on Defendant 1, this risk outweighs any hardship Defendant 1 will suffer by having his cryptocurrency accounts frozen until such a time as the Court may hold a hearing in this matter. The fourth factor, which inquires as to whether a TRO would harm the public interest, yields the same conclusion. A TRO in a case like this serves to promote the objectives of the United States "Department of Treasury in providing assurance that courts will protect and aid investors in the recovery of stolen assets." *Yogaratnam v. Dubois*, No. 24-CV-393, 2024 WL 758387, at \*4 (E.D. La. Feb. 23, 2024) (citing *Hikmatullaev v. Villa*, No. 23-CV-22338, 2023 WL 4373225, at \*3 (S.D. Fla. June 28, 2023)).

Finally, the Court finds a TRO may be entered absent notice to Defendant 1 because the Amended Complaint provides specific facts which, if true, show Plaintiff will suffer an immediate and irreparable loss before Defendant 1 can be heard in opposition to this motion.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for a TRO is **GRANTED**, and a TRO is entered as follows:

1. Defendant 1 and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he acts or who act in active concert or participation with him, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant 1 or any business

entity through which he acts or which act in active concert or participation with him; including but not limited to those assets currently held in (1) the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account he maintains or control anywhere other than in the Destination Addresses.

2.  Notice was not provided to Defendant 1 prior to entry of this Order because his identity is presently unknown to Plaintiff and because of the risk that Defendant 1 will transfer Plaintiff's allegedly stolen assets to an untraceable account.

3.  Federal Rule of Civil Procedure 65(c) requires that security be posted by Plaintiff. The Court has determined that $100 is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Rule 65(c), Plaintiff, **on or before April 26, 2024**, post a bond in the amount of $100 to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

4.  Upon a showing of good cause by any party-of-interest, the Court may enter an order amending the amount of Plaintiff's bond requirement as a means of providing a source of funds to which Defendant 1 may be entitled for a wrongful injunction or restraint.

5.  This TRO shall expire **fourteen days** from its entry unless, for good cause shown, the Order is extended or Defendant 1 consents that it should be extended for a longer period of time. Additionally, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

6.  A hearing is set for **April 24, 2024, at 3:00 p.m.** at the United States District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130,

Courtroom C-555, for the purpose of determining whether to convert this TRO into a preliminary injunction.

New Orleans, Louisiana, this 16th day of April 2024.


_____

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEYSEN ZIVAN YOGARATNAM | CIVIL ACTION |
| VERSUS | NO. 24-393 |
| JOHN DOE, et al. | SECTION: "G"(4) |

## ORDER

On February 23, 2024, the Court granted Plaintiff Jeysen Zizan Yogaratnam's ("Plaintiff") Motion for Temporary Restraining Order.[1] On March 8, 2024, the Court held a preliminary injunction hearing in this matter.[2] The same day, the Court entered a preliminary injunction as to certain wallet addresses.[3] On May 21, 2025, Plaintiff filed a Motion to Set Preliminary Injunction Hearing as to Certain Wallet Addresses.[4] Following discovery, Plaintiff's expert traced some of the stolen cryptocurrency to additional wallet addresses.[5] Due to the nature of the Tokenlon exchange, Plaintiff represented that certain users did not receive notice of the prior preliminary injunction hearing.[6] Therefore, Plaintiff requested that a second hearing be set as to additional wallet addresses.[7] A second hearing was held on June 10, 2025. Despite receiving notice of the

---

[1] Rec. Doc. 8.

[2] Rec. Doc. 11.

[3] Rec. Doc. 12.

[4] Rec. Doc. 30.

[5] *Id.*

[6] *Id.*

[7] *Id.*

1

hearing,[8] no defendants appeared.

For the reasons more fully explained by the Court in its prior Orders issuing the Temporary Restraining Order[9] and Preliminary Injunction,[10] the Court finds that Plaintiff has met the requirements for a Preliminary Injunction as to additional wallet addresses. Accordingly,

**IT IS HEREBY ORDERED** that the March 8, 2024 Preliminary Injunction is expanded as follows:

1. Defendants and their agents, servants, employees, attorneys, partners, successors, assignees, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held in the following cryptocurrency wallet addresses:

   BINANCE:

   0xe66b1c7ede325133e51346b7ee4814c7831f2542

   0x22aa3bb823ea431b576dbb5d4da08242d04cd906

   0x77f2df8f9d1ff74b1d207825cc0122aff799ccd8

   0xe85265af5085cc36239c04ae188c0a0352cae721

   MASKEX:

   0xbe921ea3bd0c879a8688b7fabe6b3c8a471df90d

---

[8] Rec. Doc. 32.

[9] Rec. Doc. 8.

[10] Rec. Doc. 12.

OKX:

0xe3ce584ff3b055ac75580f514dceeeea4e663741

2. This Preliminary Injunction shall remain in effect until the Court's entry of a final judgment on the merits of Plaintiff's claims in this action unless otherwise ordered by the Court.

**NEW ORLEANS, LOUISIANA**, this ___10th___ day of June, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

3

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROMES H. PHILLIPS

    Plaintiff,

v.

DEFENDANT "1" a/k/a "Barry Knapps", DEFENDANT "2" a/k/a "Colin Gordon", DEFENDANT "3" a/k/a "Mary", DEFENDANT "4" a/k/a "Linda", DEFENDANT "5" a/k/a "Mia", DEFENDANT "6" a/k/a "Eric Gordon", and

JOHN DOE Defendants 1-27 who are the cohorts of DEFENDANTS "1" – "6" and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:

Binance:
0x82662cbd238481905f7cfbc4f95d057a638b15f2;
0x23c2d0c598ecfbb2550023351ba08733d0c4babf;
0x805fc72c614e75ffb039492b34fb9916eba69fe9;
0x2ae31977234cfef28a6ed38c7bdf38e384623f0d; and
0xaf490983a79be16937f54f8bd31bcdeda7904012

Coinbase:
0x98a4899698695704570f2f113b06660305ac69f5d;
0xc381df96ca11f3334cdead9adf34c8b799f95b1a;
0x767dad5f4722b320f6c2606fef0f6708c5c6d9a4;
0xb1398b1bd4faec59dfc9eaeed06ea5cb0c3c2620;
0x03d8517f59619523dfefec1befe356537a966448;
0xa5c167e6ebe8034d421c0672403f3fd54e801c2a;
0x628820c2aa8d07a263c1a53d6751006160dd60c2;
and
0xf78a59f4250370e1df46625877bf9490256b12ab

Crypto.com:
0x360a7dc6fdb265e6485bd0c33b53c4132e38513f; and

Case No. 1:24-cv-07511

Honorable Jorge L. Alonso

1

0xf9ccaf031218e96037f3a2ab21663ad941fa45e8
HuionePay:
TGv1XhT88GNLFegy4ZRKrWBswhPg1deH6Y;
TWrQSUSYe2QM1xzN8zfbovqL7GvtkGeEPr;
TBTAhqKxDfGqnkQHAHxHDjTXtM3HMu2bzr;
TYUEVdDWKKoAYJgx11wsAdTw5gx1L6NMDu;
0x199c4512036496e680cd7df761625d1bb04b5328;
and
TT8CMUukaHxYXc67nYJH6LWy16TG1b82ZU
KuCoin:
0x83a918ea9b5b4b55ea664bc6f82fe644887650ff
OKX:
0x4a2808ad0fe3f089c5a58cc403e1471d642378df;
0xb3514f812ce54f5c285eeec0c9f6c64f3d582ce3;
0xdda30eab4666e7ee444083a9a73d6b39a6ae8974;
0xe34c94b8efe75da7e74e6d30534ddb136b501334;
and
0x3ab6d1588d101615eab14c198a97c590e6c741d9
Defendants.

## PRELIMINARY INJUNCTION

THIS CAUSE comes before the Court on Plaintiff's Motion for Entry of a Preliminary Injunction against DEFENDANT "1" a/k/a "Barry Knapps", DEFENDANT "2" a/k/a "Colin Gordon", DEFENDANT "3" a/k/a "Mary", DEFENDANT "4" a/k/a "Linda", DEFENDANT "5" a/k/a "Mia", DEFENDANT "6" a/k/a "Eric Gordon", and JOHN DOE Defendants 1-27, owners of the cryptocurrency addresses where Plaintiff's stolen funds were deposited.

As explained below, after careful review of the Motion and Plaintiff's supporting memorandum, Plaintiff's Motion for Preliminary Injunction is GRANTED.

## ANALYSIS

**A. The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief**

Plaintiff seeks preliminary injunctive relief against Defendants pursuant to Rule 65 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 65.

Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc.*, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing Grupo, 527 U.S. at 324-325); *see also In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004) (citations omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id*. at 1085.

When faced with a motion for a preliminary injunction, a district court must remain flexible and weigh the equities as to each element of preliminary relief sought by the plaintiff. *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1435-36 (7th Cir. 1986). Preliminary injunctions are "by [their] very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness." *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 739, 742 (2nd Cir. 1953). *See also United States v. White County Bridge Commission,* 275 F.2d 529, 534 (7th Cir. 1960).

Here, Plaintiff seeks equitable relief in addition to his legal remedies and is entitled to a temporary preliminary injunction to maintain the status quo until the claims in the Amended Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges common

3

law torts (conversion and unjust enrichment) and requests relief in the equitable imposition of a constructive trust. [ECF No. 31 at ¶ 43-84].

Additionally, regarding the claim for imposition of a constructive trust, Illinois courts have held that "a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving the benefit to convey the property back to the person from whom it was received." *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 745 (1994) (citing Restatement of Restitution § 160); *see also Dexia Credit Loc. v. Rogan*, 629 F.3d 612, 630 (7th Cir. 2010).

In disputes strikingly similar to the instant action, other courts have awarded the equitable relief sought by Plaintiff here. See *Fitzgerald v. Defendant "1" a/k/a "Lisa", et al.,* Case No. 1:24-cv-21925 (S.D. Fla. July 9, 2024)*; Chow v. Defendant "1" a/k/a "Kai Xuan Wang", et al.,* Case No. 2:24-cv-00480 (E.D. La. May 1, 2024)*, Salem v. Defendant "1" a/k/a "Anna Asfahany", et al.,* Case No. 3:24-cv-00093 (N.D. Fla. April 23, 2024)*; Jambulingam v. Defendant "1" a/k/a "Amead", et al.,* Case No. 3:24-cv-00116 (N.D. Fla. April 23, 2024); *Yogaratnam v. Defendant "1" a/k/a "Darina Dubois", et al.*, Case No. 2:24-cv-00393 (E.D. La. March 8, 2024); *Blum v. Defendant "1" a/k/a "Mia Tara", et al.*, Case No. 3:23-cv-24734 (N.D. Fla. December 23, 2023); *Lin v. Defendant "1" a/k/a "Fanxin Lin", et al.*, Case No. 2:23-cv-05878 (E.D. La. December 19, 2023); *Ohlin et al. v. Defendant 1 a/k/a Selina, et al*., Case No. 3:23- cv-08856 (N.D. Fla. June 22, 2023); *Astrove v. John Doe*, Case No. 9:22-cv-80614, 2022 WL 2805315 (S.D. Fla. June 17, 2022).

For the reasons described below, Plaintiff is entitled to a preliminary injunction.

**B.    A Preliminary Injunction Is Appropriate**

Under Illinois law, a "party seeking a preliminary injunction or TRO must establish facts demonstrating the traditional equitable elements that (1) it has a protected right; (2) it will suffer

irreparable harm if injunctive relief is not granted; (3) its remedy at law is inadequate; and (4) there is a likelihood of success on the merits." *Cnty. of Du Page v. Gavrilos,* 359 Ill. App. 3d 629, 634, 834 N.E.2d 643, 649 (2005).

After review of the record and Plaintiff's Motion, this Court finds that Plaintiff has established facts demonstrating that he is entitled to a Preliminary Injunction in his favor.

## CONCLUSION

In view of the foregoing, Plaintiff's Motion for Preliminary Injunction is **GRANTED**. A Preliminary Injunction is entered as follows:

1. Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendants or any business entity through which he/they act or which act in active concert or participation with them, as it relates to those assets currently held in the below listed Destination Addresses at the Binance, Coinbase, Crypto.com, HuionePay, KuCoin, and OKX exchanges where Plaintiff's stolen funds were transferred.

| Exchange | Wallet Address |
|---|---|
| Binance | 0x82662cbd238481905f7cfbc4f95d057a638b15f2 |
| | 0x23c2d0c598ecfbb2550023351ba08733d0c4babf |
| | 0x805fc72c614e75ffb039492b34fb9916eba69fe9 |
| | 0x2ae31977234cfef28a6ed38c7bdf38e384623f0d |
| | 0xaf490983a79be16937f54f8bd31bcdeda7904012 |
| Coinbase | 0x98a48996986957045702f113b06660305ac69f5d |

|  | 0x767dad5f4722b320f6c2606fef0f6708c5c6d9a4 |
|---|---|
|  | 0xb1398b1bd4faec59dfc9eaeed06ea5cb0c3c2620 |
|  | 0x03d8517f59619523dfefec1befe356537a966448 |
|  | 0xa5c167e6ebe8034d421c0672403f3fd54e801c2a |
|  | 0x628820c2aa8d07a263c1a53d6751006160dd60c2 |
|  | 0xf78a59f4250370e1df46625877bf9490256b12ab |
| Crypto.com | 0x360a7dc6fdb265e6485bd0c33b53c4132e38513f |
|  | 0xf9ccaf031218e96037f3a2ab21663ad941fa45e8 |
| HuionePay | TGv1XhT88GNLFegy4ZRKrWBswhPg1deH6Y |
|  | TWrQSUSYe2QM1xzN8zfbovqL7GvtkGeEPr |
|  | TBTAhqKxDfGqnkQHAHxHDjTXtM3HMu2bzr |
|  | TYUEVdDWKKoAYJgx11wsAdTw5gx1L6NMDu |
|  | 0x199c4512036496e680cd7df761625d1bb04b5328 |
|  | TT8CMUukaHxYXc67nYJH6LWy16TG1b82ZU |
| KuCoin | 0x83a918ea9b5b4b55ea664bc6f82fe644887650ff |
| OKX | 0xb3514f812ce54f5c285eeec0c9f6c64f3d582ce3 |
|  | 0xe34c94b8efe75da7e74e6d30534ddb136b501334 |
|  | 0x3ab6d1588d101615eab14c198a97c590e6c741d9 |

2. The $1,000 bond posted by Plaintiff shall remain in the registry of the Court until a final disposition of this case or until the Preliminary Injunction is terminated.

**DONE AND ORDERED** this 18th day of March, 2025.

**SO ORDERED.**

_____

Jorge L. Alonso
United States District Judge

6

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**JOHN J. BLUM,**

    **Plaintiff,**

      **v.**                **CASE NO. 3:23-cv-24734-MCR-HTC**

**DEFENDANT 1 a/k/a**
**MIA TARA, et al.,**

    **Defendants.**

_____/

## <u>ORDER</u>

Plaintiff John J. Blum has filed an Emergency Motion for Temporary Restraining Order Without Notice against Defendant 1 a/k/a MIA TARA and her accomplices JOHN DOES 1-20.[1]  ECF No. 5.  On consideration, the motion is granted.

## I. Background

According to the Verified Complaint, Defendants deceived Blum into transferring approximately $1,160,615.58 worth of cryptocurrency into Defendants' private cryptocurrency wallet addresses (collectively "Destination Addresses") after

---

[1]  Blum does not know the true identities of the Defendants but believes they are foreign nationals.  ECF No. 5 at 6 (stating that the only available identifiable information are Defendants' cryptocurrency wallet addresses).  As a result, Defendants have not been served with the Verified Complaint or the pending Emergency Motion for TRO.  *See similarly Ohlin et al. v. Defendant 1 a/k/a Selina, et al.*, No. 3:23-cv-08856, at *2 (N.D. Fla. May 26, 2023) (granting a TRO where plaintiffs did not know the true identity of defendant).

Defendant 1 fraudulently represented that she was a cryptocurrency investor who would assist Blum in investing his cryptocurrency. ECF No. 1 at 1. Relying on Defendants' misrepresentations, Blum believed he had downloaded a legitimate and regulated cryptocurrency exchange smartphone application but instead downloaded and ultimately transferred his cryptocurrency assets to a smartphone application that facilitated the transfer of Blum's cryptocurrency assets into Defendants' Destination Addresses. Blum alleges that blockchain analytics traced the path of Blum's cryptocurrency assets to various unauthorized transfers to Destination Addresses under Defendants' sole control. *See* ECF No. 1 at 8, 11. Blum alleges that, through a company he hired to investigate, he was able to trace his stolen assets to Destination Addresses owned or controlled by Defendants.[2] More specifically, Blum identifies the following Destination Addresses located within the MEXC, OKX, and HTX cryptocurrency exchanges, *see* ECF Nos. 1-1 and 5:

| Destination Addresses |
|---|
| MEXC  32CEytgVfa8qSLRKj6SJKSkEA24KJaewkH |
| MEXC  3Kg3fotNUVXAWKDn7NyKgjBDEJxy1v4GCE |
| MEXC  3NadyvuQjcCm41CqHfUVakjVRkq2jRSXDd |
| MEXC  32vy55gghsFgEppwjWLaff3bzv6udZM4wY |
| MEXC  3KxwJnLDhxhamuRkVznwrpm2zCP3B6mot4 |

---

[2]     According to the Verified Complaint, Blum retained CipherBlade, a forensic cryptocurrency tracing expert, to trace the stolen assets. ECF No. 1 at 9. While the Destination Addresses are not listed in the Verified Complaint, Blum attached CipherBlade's tracing report containing the Destination Addresses to the Verified Complaint and incorporated it by reference. ECF No. 1-1.

| MEXC_38Zdq6Tc4n8qK6mxPEa76CU3LamYFWLMvN |
| --- |
| MEXC_13uZyaPbt4rTwYQ8xWFySVUzWH3pk2P5c7 |
| MEXC_33ze68qZoBE9R4uMtRQGNnvgFTYN4sPBUq |
| OKX_3DCFNFRVBdyzGjHsJzn1tid2rJhu5S19Ta |
| OKX_bc1quhruqrghgcca950rvhtrg7cpd7u8k6svpzgzmrjy8xyukacl5lkq0r8l2d |
| 38r6qe12gLJJy2N1UTjUVrkn7rneQKjwAN |
| HTX_1PSPQhnNrCqMR9eWSh8csrE929Yo7sQeLB |
| HTX_1AQLXAB6aXSVbRMjbhSBudLf1kcsbWSEjg |
| 323DZ6xJK7KSescPmW2MPNkWU1JXCD9uUx |

On December 1, 2023, Blum filed a four-count Complaint in this Court for (1) conversion; (2) unjust enrichment; (3) imposition of constructive trust and disgorgement of funds; and (4) conspiracy. ECF No. 1. Ten days later, Blum filed this *ex parte* Emergency Motion for Temporary Restraining Order seeking to freeze Defendants' assets at the specified Destination Addresses. ECF No. 5.

## II. Legal Standard

A court may grant a temporary restraining order ("TRO") *ex parte* when certain conditions are met. Fed. R. Civ. P. 65(b)(1); *see Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) (noting that a TRO "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"). Before a TRO may be issued, specific facts in the form of an affidavit or verified complaint must demonstrate that an "immediate and irreparable injury, loss, or damage will result to the movant

before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. Fed. R. Civ. P. 65(b)(1). When a TRO is "issued without notice to the adverse party," the order must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice[;] and be promptly filed in the Clerk's Office and entered in the record." *Astrove v. John Doe*, No. 9:22-cv-80614, 2022 WL 2805315, at *2 (S.D. Fla. Apr. 22, 2022) (quoting Fed. R. Civ. P. 65(b)(1)).

The party seeking a TRO must demonstrate that "(a) there is a substantial likelihood of success on the merits; (b) the TRO . . . is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO . . . would cause to the non-movant; and (d) the TRO . . . would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (quoting *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) (finding that "[t]he first of the four prerequisites to temporary injunctive relief is generally the most important").

CASE NO. 3:23-cv-24734-MCR-HTC

## III. Discussion

Blum is entitled to a TRO preventing removal or transfer of  Defendants'
assets contained in the Destination Addresses to preserve the *status quo ante* pending
the outcome of this litigation.  *See, e.g., Hikmatullaev v. Villa*, No. 23-cv-22338-
ALTMAN/REID, 2023 WL 4373225, at *3 (S.D. Fla. June 28, 2023) (finding that
"[p]laintiffs request to have [crypocurrency] accounts frozen to prevent dissipation
of the assets . . . is logical, appropriate, and is a common remedy employed in similar
cases").

Blum has shown a strong likelihood of success on the merits of his claims
against Defendants.  It appears from the record that Defendants have no right to
claim either possession or ownership of the stolen assets.  Blum's cryptocurrency
assets are specific, identifiable property that can be traced to Defendants'
Destination Addresses.  Blum has shown that irreparable harm will ensue absent a
TRO, considering the speed with which cryptocurrency transactions are made, as
well as the anonymous nature of those transactions.  *See, e.g., Hikmatullaev*, 2023
WL 4373225, at *3 (noting that "[c]ourts have found that such a showing satisfies
the irreparable harm prong because of 'the speed with which cryptocurrency
transactions are made as well as the anonymous nature of those transactions'"
(quoting *Astrove*, 2022 WL 2805315, at *3)).

CASE NO. 3:23-cv-24734-MCR-HTC

The balance of hardships also favors Blum because a TRO preserves the *status quo ante* and prevents irreparable harm until such time as the Court may hold a hearing. Entry of a TRO also does not harm the public interest, which is properly served by promoting the objectives of the U.S. Department of the Treasury and providing assurance that courts will protect and aid investors in their recovery of stolen assets. *See id.*, at *3 ("entering a TRO favors the public interest because . . . [f]reezing [] cryptocurrency accounts reassures the public that even with transactions conducted in the cryptocurrency space, there is an adequate remedy at law to prevent fraud or theft").

Lastly, the Court enters the TRO without notice to the Defendants because Blum provided specific facts in his Verified Complaint showing that immediate and irreparable loss will result absent the TRO and Blum does not currently know the Defendants' true identities. *See, e.g., Ohlin et al. v. Defendant 1 a/k/a Selina, et al.*, No. 3:23-cv-08856, at *4 (N.D. Fla. May 26, 2023) (entering a TRO without notice for similar reasons). Additionally, because of the apparent strength of the case, Blum need only provide a modest amount of security pursuant to Fed. R. Civ. P. 65(c). *Id.* at *7 (finding that plaintiffs only needed to provide $100 in security because of the "apparent strength" of their case).

CASE NO. 3:23-cv-24734-MCR-HTC

Accordingly, Blum's Emergency Motion for Temporary Restraining Order, ECF No. 5, is **GRANTED.**  A TRO is entered as follows:

1. Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which she/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendants or any business entity through which she/they act or which act in active concert or participation with them; including but not limited to those assets currently held in: (1) the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

2. Notice was not provided to Defendant 1 or JOHN DOES 1-20 prior to entry of this Order because her/their identities are presently unknown to Plaintiff.

CASE NO. 3:23-cv-24734-MCR-HTC

3. Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiff, the Court has determined that One Hundred Dollars ($100.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiff shall — within ten (10) calendar days of this Order — post a bond in the amount of One Hundred Dollars ($100.00) to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

4. On a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as a means of providing a source of funds to which Defendants may be entitled for a wrongful injunction or restraint.

5. This TRO will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless the Court extends this Order upon a showing of good cause or Defendants consent that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, modify or lift the Order.

An evidentiary hearing to determine whether to convert this TRO into a preliminary injunction is scheduled for December 19, 2023 at 9:00 a.m. (CT), in Courtroom 5, United States Courthouse, One North Palafox Street, Pensacola, FL 32502.  Plaintiff is directed to serve the Defendants with this Order and to file a notice of compliance on the Court's docket.  Three hours are reserved.

**DONE AND ORDERED** this 13th day of December 2023 at 5:20 p.m. (CT).

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 3:23-cv-24734-MCR-HTC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**MARCO OHLIN and NATASHA PARACHA**,

      **Plaintiffs**,

**v.**                                **Case No. 3:23cv8856-TKW-HTC**

**DEFENDANT 1** a/k/a **SELINA**, **et al.**,

      **Defendants**.

_____/

## <u>TEMPORARY RESTRAINING ORDER</u>

On April 26, 2023, Plaintiffs filed a complaint against 21 yet unidentified Defendants for (1) conversion, (2) unjust enrichment, (3) imposition of a constructive trust and disgorgement, (4) and conspiracy related to cryptocurrency fraud.  Plaintiffs amended their complaint on May 18, 2023, and this morning, Plaintiffs filed an *ex parte* emergency motion for a temporary restraining order (TRO) to freeze assets in certain cryptocurrency "wallets."  Plaintiffs claim that they have identified the particular cryptocurrency wallets where Defendants have secreted Plaintiffs' stolen assets, and they ask the Court to issue an order preventing Defendants from moving or transferring those assets from the identified wallets. Upon due consideration of Plaintiffs' *ex parte* emergency motion (Doc. 5) and the attachments thereto, as well as the first amended complaint (Doc. 3), the Court finds

that Plaintiffs have met the requirements for issuance of an *ex parte* TRO.

## Background

Plaintiffs claim that "Defendant 1," who they also refer to as "Selina," deceived them into transferring approximately $862,318.73 worth of various cryptocurrencies into accounts that Defendant 1 misrepresented to be legitimate accounts established for Plaintiffs' benefit but in actuality were Defendants' own privately controlled accounts. Once Plaintiffs transferred their cryptocurrency assets into these fraudulent accounts, Defendants allegedly converted them for their own benefit.

Plaintiffs do not know the true identity of Defendant 1 or her alleged co-conspirators, but Plaintiffs believe Defendant 1 to be "of Chinese descent" and currently "located in China" based on IP address information.

Through blockchain analytics tracing, Plaintiffs have identified the following cryptocurrency wallet addresses at cryptocurrency exchanges BINANCE, OKX (OKEx) and GEMINI—wallet addresses which are believed to be owned or controlled by Defendants—that were used to launder the assets stolen from Plaintiffs:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | Binance | 1KAr47ZWdEmkLTPDjieF2mqHF7aJUoLEVD | BTC | 18.06583687 |
| | | | **TOTAL BTC** | **18.06583687** |
| 2. | Binance | 0x5a44717f1A7EDe7Ff3C5C6668B7d6cd84323634E | ETH | 19.110906 |
| 3. | Gemini | 0xD620c2Db204247c3C4db370999C90d7b1E5023A2 | ETH | 0.098604 |
| | | | **TOTAL ETH** | **19.20951** |
| 4. | OKX | 0xcA9B4a51C2ee3F65432f41ea71B6C693551B38F4 | USDT | 210000 |
| 5 | OKX | 0x1ce6880Ae94db5FBb5772EdA73A29c101F4D7D0d | USDT | 165025 |
| 6. | OKX | 0xE62462b570A34Cc19C59005289D193fb2fB6E3EA | USDT | 24139 |
| | | | **TOTAL USDT** | **399,164** |

In addition to the foregoing, as of the date of this filing, blockchain analytics have traced Plaintiffs' stolen funds to and/or through the following cryptocurrency wallet addresses, which are believed to be owned or controlled by Defendants and which are believed to still be holding at least some of the assets stolen from Plaintiffs:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (confirmed amount with blockchain data analysis, in cryptocurrency unit) |
|---|---|---|---|
| 1 | 0x389505f098a29a994A3ed0e674f07cd451dde42C | ETH | 0.735681 |

| 2 | 0x000F422887eA7d370FF31173FD3B46c8F66A5B1c | ETH | 0.43432389 |
|---|---|---|---|
| | | **TOTAL ETH** | **1.17000489** |

Plaintiffs request that the Court freeze the assets contained in the cryptocurrency wallet addresses identified above (the "Destination Addresses"). Given that Defendants are currently unidentified, Plaintiffs have not served them with process, but propose to eventually do so through the use of a "Non-Fungible token" sent directly to the Destination Addresses.

## Analysis

The Court finds that it has the authority to issue a TRO freezing assets under the circumstances alleged and substantiated by Plaintiffs, and it finds that it has the authority to do so without first issuing notice to Defendants.

*First*, while a court cannot freeze a defendant's assets prior to trial in a case where only money damages are at issue, *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999), Plaintiffs have sought the equitable remedy of a constructive trust here. "Where equitable relief is sought … a district court can appropriately issue an asset freeze order to preserve funds for the equitable remedy, even where the request for equitable relief is coupled with requests for money damages." *Absolute Activist Value Master Fund Ltd. v. Devine*, 2016 WL 1572388, at *3 (M.D. Fla. Apr. 19, 2016) (internal citations omitted). Further, at least one other court in this circuit has issued a TRO in this exact circumstance—an asset

freeze of cryptocurrency wallets controlled by yet unidentified defendants. *See Astrove v. Doe*, 2022 WL 2805315 (S.D. Fla. April 21, 2022).

*Second*, Federal Rule of Civil Procedure 65(b)(1) allows a court to issue a TRO without notice to the defendant where the adverse party has alleged (1) "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." The Court finds that Plaintiffs have met these elements because: Plaintiffs' declarations show that the stolen assets could be transferred from the Destination Addresses (perhaps to unidentifiable and/or unretrievable locations) at any moment, making time of the essence; the thrust of Plaintiffs' complaint is that Defendants are attempting to conceal their assets, which gives the Court every reason to believe the Defendants would further hide those assets if they were given notice, *cf. ABG EPE IP, LLC v. 3C Smart Store*, 2021 WL 2452636, at *4 (N.D. Ga. Apr. 17, 2021) (ex parte TRO warranted to "avoid affording Defendants an opportunity to destroy relevant evidence, much of which is in electronic form"); and, finally, Plaintiffs have not yet identified Defendants and therefore could not be expected to give them notice.

Once the procedural requirements of Fed. R. Civ. P. 65(b)(1) are met, "[a]

TRO … is appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the TRO … is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO … would cause to the non-movant; and (d) the TRO … would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (quoting *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985)). "[T]he first two factors … are the most critical," *Niken v. Holder*, 556 U.S. 418, 435 (2009); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) ("The first of the four prerequisites to temporary injunctive relief is generally the most important.").

Here, Plaintiffs have shown a substantial likelihood of success on the merits of their claims against Defendants for conversion, unjust enrichment, and imposition of a constructive trust and disgorgement of funds held by Defendants in the Destination Addresses. Plaintiffs have alleged and provided evidence that Defendants acquired Plaintiffs' assets fraudulently and have no legitimate claim to them.

Plaintiffs have also shown that irreparable harm will ensue absent a TRO. Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the *status quo* to avoid dissipation of the money illegally taken

from Plaintiffs.

The threatened injury to Plaintiffs also outweighs any harm Defendants may suffer by virtue of the TRO. Maintaining the assets within the Destination Addresses is perhaps Plaintiff's only realistic chance at a future recovery in this case, and Defendants will suffer at worst a temporary inability to move assets that it appears they have no right to possess.

A TRO will not be adverse to the public interest because it will promote the rule of law and investor confidence in cryptocurrency transactions.

Lastly, because of the apparent strength of Plaintiffs' case, the Court concludes that Plaintiffs need only provide a modest amount of security pursuant to Fed. R. Civ. P. 65(c) at this time.

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' *ex parte* emergency motion for a temporary restraining order Doc. 5 is **GRANTED**. A temporary restraining order is entered as follows:

1. Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which she/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets

currently held in the Destination Addresses.

2.     Notice was not provided to Defendants prior to issuance of this Order for the reasons stated above.

3.     Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiffs, the Court has determined that One Hundred Dollars ($100.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiffs shall — within seven (7) calendar days of this Order — post a cash bond in the amount of One Hundred Dollars ($100.00) to secure this Order.

4.     Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiffs' bond requirement as a means of providing a source of funds to which Defendants may be entitled for a wrongful injunction or restraint.

5.     This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendants consent that to its extension for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

6. A hearing to determine whether to convert this temporary restraining order into a preliminary injunction is set for Thursday, June 8, at 9:00 A.M. central time in Courtroom 4 North at the United States Courthouse, 1 North Palafox Street, Pensacola, Florida, 32502.

**DONE and ORDERED** this 26th day of May, 2023, at 2:00 P.M. central time.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-80614-RAR

ANDREW ASTROVE,

     Plaintiff,

v.

JOHN DOE,

     Defendant.

_____/

ORDER GRANTING PLAINTIFF'S *EX PARTE* EMERGENCY MOTION FOR
ENTRY OF TEMPORARY RESTRAINING ORDER AND SETTING HEARING
ON MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** comes before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice against Defendant JOHN DOE [ECF No. 3] ("Motion"). As explained below, after careful review of the Motion and Plaintiff's Declaration [ECF No. 3-1], Plaintiff has satisfied the requirements for the issuance of a temporary restraining order.

**BACKGROUND**

Under Defendant's guidance, Plaintiff opened a cryptocurrency account at U.S.-based cryptocurrency exchange Coinbase, which Plaintiff funded with monies that were used to purchase cryptocurrency that was subsequently transferred to what Plaintiff believed was another cryptocurrency exchange, "MINE DIGITAL." Plaintiff funded his Coinbase account with approximately One Million Four Hundred Thousand Dollars ($1,400,000.00); used those funds to purchase Tether[1], and then sent those Tether to an investment account allegedly created for Plaintiff that was overseen by Defendant JOHN DOE.

---

[1] Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains. It is categorized as a "stablecoin," because it was originally designed so that each

According to Defendant, the external investment account into which Plaintiff's Tether was being deposited was maintained at Australian cryptocurrency exchange Mine Digital. Defendant provided Plaintiff Mine Digital's purported exchange website URL as: "MCWLEX.xyz" and instructed Plaintiff to set up his cryptocurrency account there. As Plaintiff later learned, the correct website URL for Mine Digital is "minedigital.exchange," not "MCWLEX.xyz."

Evidence in the record suggests Defendant cloned the real Mine Digital website so that his cloned copy would appear to be a legitimate cryptocurrency exchange. The cloned site to which Defendant directed Plaintiff was not legitimate, though; it served as an engine of theft for Defendant, providing him a mechanism to proffer Plaintiff false account statements and real-time values of cryptocurrency markets on legitimate exchanges that masked the fraudulent scheme Defendant was perpetrating upon Plaintiff. In essence, the "Mine Digital account" to which Plaintiff was sending his cryptocurrency holdings was actually — unbeknownst to Plaintiff — Defendant's own private cryptocurrency address.

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant's sole control or have been liquidated into fiat currency and dissipated by Defendant.

For example, Plaintiff's stolen assets have been traced to the following cryptocurrency wallet addresses at cryptocurrency exchanges FTX, KRAKEN, OKX (OKEx), BINANCE, GATE.IO, and ZB.COM — wallet addresses which are believed to be owned or controlled by

---

coin would always be worth One Dollar ($1.00 USD). Thus, one USDT is worth roughly $1.00; and 1,400,000 USDT are worth roughly $1,400,000.00. Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

Defendant or an unknown third-party to whom he has transferred those stolen assets, and which have been used to launder the assets stolen from Plaintiff:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1. | FTX | e9d3aa47497e63d27916ec0947174e2f778581bb | USDT | 380,056.73823 USDT |
| 2. | Kraken | 57ae39494b91f947866b86d9655c0e7fdc093f14 | USDT | 169,304.42112 USDT |
| 3. | Bitfinex.com /Crypto.com | d4dcd2459bb78d7a645aa7e196857d421b10d93f | USDT | 83,401.620357 USDT |
| 4. | OKX (OKEx) | 39243d72d9c26d26bd8317838908e7f2682af284 | USDT | 80,060.512581 USDT |
| 5. | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 60,978.520990 USDT |
| 6. | FTX | ccfaedbcfe19f10607ce7f9b0d64295d979b606d | USDT | 38,726.667998 USDT |
| 7. | gate.io | 49b8229ddd86b47e6ebab43bd54b71e80aff3a0f | USDT | 18,910.227524 USDT |
| 8. | ZB.com | 15df4ca7b60d09f0070e4c42ef08031c73167686 | USDT | 5,908.5983 USDT |
| | | | TOTAL | **837,347.3072 USDT** |

In addition to the foregoing, as of the date of this filing, blockchain analytics have traced Plaintiff's stolen funds to and/or through the following cryptocurrency wallet addresses (among others), which are believed to be owned or controlled by Defendant or an unknown third-party to whom he has transferred those stolen assets, and which are believed to still be holding some of the assets stolen from Plaintiff:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 431758befb274b88599401a1d7445dcb50c71122 | USDT | 11,721.149170 USDT |
| 2 | e7b36e1a636d31aa3d2e8918f80fecdb41f8cd6d | USDT | 7,704.7557322 USDT |
| 3 | e0fe2b4c9f7d58a05b4a16b71ef8afb42557aef2 | USDT | 5,980.596504 USDT |
| 4 | 7b6d0d7a60f3b14f721195c0d289807e9dde9559 | USDT | 2,444.308878 USDT |
| | | TOTAL | **27,850.81028 USDT** |

As a result of the foregoing scheme, Plaintiff has lost approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) and is left trying to get answers to help him uncover where his funds are or where they went after they were stolen by JOHN DOE.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65, a Court may grant a temporary restraining order *ex parte*. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See* Fed. R. Civ. P. 65(b)(1). Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record. The Order expires at a time after entry — not to exceed fourteen (14) days." *Id*. at (b)(2).

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## ANALYSIS

Plaintiff has shown a strong likelihood of success on the merits of his claims against Defendant JOHN DOE for: (1) fraudulent inducement, (2) negligent misrepresentation, (3) replevin, (4) conversion, and (5) unjust enrichment as well as for imposition of a constructive trust and disgorgement of funds held by JOHN DOE in the aforementioned Destination Addresses to which JOHN DOE transferred any portion of the funds purportedly stolen from Plaintiff. Specifically, in light of the foregoing facts, Plaintiff is entitled to a temporary restraining order freezing Defendant JOHN DOE's assets — including the Destination Addresses maintained by Defendant JOHN DOE, for him, or by any entity under his control — to preserve the *status quo ante* pending the outcome of this litigation.

The cryptocurrency assets at issue are specific, identifiable property and can be traced in JOHN DOE's assets in the Destination Addresses or elsewhere. Plaintiff has established in his Motion and the Declaration in support thereof that Plaintiff's rights will be immediately and

irreparably harmed absent a temporary restraining order from this Court. Without entry of the temporary restraining order, Plaintiff may be unable to recover for his equitable claims.

Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiff. Plaintiff was victimized by the theft of his cryptocurrency assets, and it appears from the record that JOHN DOE has no right to claim either possession or ownership of Plaintiff's stolen assets. Therefore, there is a high likelihood Plaintiff will succeed on his claims.

The balance of hardships also favors Plaintiff because a temporary restraining order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing. Entry of a temporary restraining order will also not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.

Lastly, because of the apparent strength of Plaintiff's case, the Court concludes that Plaintiff need only provide a modest amount of security pursuant to Fed. R. Civ. P. 65(c) at this time.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion [ECF No. 3] is **GRANTED**. A temporary restraining order is entered as follows:

1.      Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) the Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

2.      Notice was not provided to Defendant JOHN DOE prior to entry of this Order because his identity is presently unknown to Plaintiff.  The Court will separately consider a request from Plaintiff to engage in expedited discovery through which Plaintiff intends to obtain from the recipient cryptocurrency exchanges listed above Defendant JOHN DOE's identity, including a physical and/or electronic address at which Defendant JOHN DOE can be contacted about the claims asserted against him in this lawsuit.

3.      Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiff, the Court has determined that One Thousand Dollars ($1,000.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order.  Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiff shall — within ten (10) calendar days of this Order — post a bond in the amount of One Thousand Dollars

($1,000.00) to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

4.      Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as a means of providing a source of funds to which Defendant JOHN DOE may be entitled for a wrongful injunction or restraint.

5.      **A telephonic hearing is set before this Court on Tuesday, May 3, 2022, at 10:00 A.M., at which time Defendant and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. The parties are instructed to call 1- 877-402-9753 by no later than 9:55 A.M. The access code is 9372453 and the password is 0918. The Court requires that the Parties appear via a landline if possible (i.e. not a cellular phone or a speaker phone) for clarity.**

6.      Defendant JOHN DOE shall file with the Court and serve on Plaintiff's counsel any answering affidavits, pleadings, motions, expert reports or declarations and/or legal memoranda no later than five (5) days prior to the hearing for preliminary injunction.

7.      If Defendant JOHN DOE timely files with the Court any papers opposing entry of a preliminary injunction, Plaintiff may file with the Court responsive or supplemental pleadings, materials, affidavits, or memoranda and shall serve same on Defendant JOHN DOE or his counsel-of-record no later than two (2) days prior to the preliminary injunction hearing.

8.      Defendant JOHN DOE is hereby on notice that failure to timely serve and file his opposition, or failure to appear at the hearing, may result in the imposition of a preliminary injunction against him pursuant to Fed. R. Civ. P. 65.

9.      This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant JOHN DOE consents that it should be extended for a longer period of time.  However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

10.     As soon as is practical upon learning from the Recipient Cryptocurrency Exchanges Defendant JOHN DOE's true identity and obtaining his contact information, Plaintiff shall forthwith serve a copy of the Complaint, Motion, and this Order on Defendant JOHN DOE by U.S. First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff, by private process server, upon any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

11.     The above dates may be revised upon stipulation by all parties and approval of this Court.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of April, 2022.


_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

Copies to:      Counsel of record

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-23607-UU

CARLOS MARTINANGELI, an individual,

    Plaintiff,

v.

AKERMAN, LLP, a Florida limited liability partnership;
EVAN KAUFMAN, an individual;
EDWARD LOVETTE, an individual;
POINT144 VENTURE CAPITAL, a foreign company; and
BANK OF AMERICA, N.A., a national banking association;

    Defendants.

_____/

## ORDER GRANTING TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice Against Defendant EDWARD LOVETTE (the "Motion"). D.E. 7. Under Federal Rule of Civil Procedure 65, a Court may grant a Temporary Restraining Order *ex parte*. Fed. R. Civ. P. 65. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See*, Fed.R.Civ.P. 65(b)(1)(A). Pursuant to the Rule, any Order issued without notice to the adverse party must state:

> the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days . . .

*Id.* at (b)(2). In evaluating the Motion, this Court has considered the following factors: (1) whether the movant has a strong likelihood of success on the merits of its claims; (2) whether the movant would suffer irreparable injury absent a restraining order; (3) whether granting the

restraining order to the movant outweighs the possible harm to the non-movants; (4) whether the movant has available to it an adequate remedy at law; and (5) whether the public interest would be served by granting the restraining order. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Having reviewed the Motion, the record, and being otherwise sufficiently advised in the premises, the Court hereby finds as follows:

1.    Plaintiff has shown a strong likelihood of success on the merits of his claims against Defendant EDWARD LOVETTE for fraudulent inducement and negligent misrepresentation as well as for imposition of a constructive trust and disgorgement of funds held in bank accounts maintained by, or for, Defendant EDWARD LOVETTE.

2.    Specifically, over the course of multiple December 2017 - February 2018 wire transfers from Plaintiff's Citibank bank account to the BANK OF AMERICA, N.A. bank account believed to be managed by Defendant EDWARD LOVETTE and his business entities, Plaintiff transferred to Defendant EDWARD LOVETTE and his business entities a sum of $1,310,000.00 thusly:[1]

| DATE OF WIRE TRANSFER | BANK OF AMERICA ACCOUNT TO WHICH FUNDS WERE WIRED | PAYEE | AMOUNT TRANSFERRED |
|---|---|---|---|
| December 11, 2017 | ***1665 (the "***1665 Account") | Blockchain Technologies Corporation | $850,000.00 |
| December 11, 2017 | ***1665 | Blockchain Technologies Corporation | $150,000.00 |
| December 12, 2017 | ***1665 | Blockchain Technologies Corporation | $100,000.00 |
| December 29, 2017 | ***1665 | Blockchain Technologies | $200,000.00 |

---

[1] *See*, DE 7-1 (September 13, 2018 Declaration of Carlos Martinangeli) at ¶ 7.

| | | Corporation | |
|---|---|---|---|
| February 14, 2018 | ***1665 | Blockchain Technologies Corporation | $10,000.00 |
| | | TOTAL | $1,310,000.00 |

3.      The Court finds the Declaration of Nikolaos Spanos[2] persuasive.  Specifically, as

stated under penalty of perjury by Nikolaos Spanos, the owner of Blockchain Technologies

Corporation:

- Point 144 Venture Capital is not a subsidiary of Blockchain Technologies Corporation, nor has it ever been.

- Neither Edward Lovette, nor any of his business entities have any business association with Blockchain Technologies Corporation.[3]

- The Bank of America account reflected on the wire transfer instructions provided to Plaintiff purports to be an account maintained by Blockchain Technologies Corporation.  However, the account listed on the wire transfer instructions is not an account of Blockchain Technologies Corporation.[4]

- If anyone wire transferred funds in compliance with the instructions provided to Plaintiff, Blockchain Technologies Corporation did not receive any such funds.[5]

- Anyone induced into wire transferring money to the account shown in the wire transfer instructions provided to Plaintiff, believing that account is an account maintained by Blockchain Technologies Corporation, was fraudulently induced into making any such monetary transfer.[6]

4.      Plaintiff has established in his Motion and the Declarations in support thereof that

Plaintiff's rights will be immediately and irreparably harmed absent a Temporary Restraining

---

[2] *See*, DE 7-2 (August 23, 2018 Declaration of Nikolaos Spanos) at ¶ 2.

[3] *Id*. at ¶ 3.

[4] *Id*. at ¶ 5.

[5] *Id*. at ¶ 7.

[6] *Id*. at ¶ 8.

Order from this Court because Defendant has already closed the Bank of America account to which Plaintiff transferred funds and emptied the account, as evidenced by Plaintiff's supplemental notice. D.E. 11. Without entry of the Temporary Restraining Order, Plaintiff may be unable to recover for his equitable claims.

5. The September 14, 2018 supplemental filing submitted by Plaintiff[7] further demonstrates that Defendant BANK OF AMERICA, N.A. has concluded that the ***1665 Account "has been closed and has no balance" and has identified certain additional accounts with "nominal balances" related to Defendant EDWARD LOVETTE and his entities that, pending the resolution of the Motion, have already been temporarily frozen by the bank.

6. The balance of hardships also favors Plaintiff, because a Temporary Restraining Order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing. *See S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (affirming district court's pre-judgment freezing of assets via preliminary injunction where Plaintiff sought equitable remedy to preserve the status quo).

7. Entry of a Temporary Restraining Order is in the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network ("FinCEN") (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined investor assets in this action.

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:

---

[7] DE 11.

## TEMPORARY RESTRAINING ORDER

1.   Plaintiff's Motion for Temporary Restraining Order against Defendant EDWARD LOVETTE, D.E. 7, is GRANTED.

2.   Defendant EDWARD LOVETTE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant EDWARD LOVETTE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) any account at BANK OF AMERICA, N.A. or any of its subsidiaries or affiliates, (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control.

## BOND TO BE POSTED

3.   Pursuant to Fed.R.Civ.P. 65(c), requiring that security be posted by Plaintiff, _Ten thousand dallars_ ~~W.U~~, Plaintiff shall post a bond in the amount of ~~Fifty Thousand Dollars and Zero Cents~~ (~~$50,000.00~~), as payment of damages to which Defendant EDWARD LOVETTE may be entitled for a wrongful injunction or restraint.

4.   Upon a showing of good cause by Plaintiff, the Court may enter a further order reducing the amount of, or waiving in its entirety, Plaintiff's bond requirement.

**DURATION OF TEMPORARY RESTRAINING ORDER**

5.      The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed.R.Civ.P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant EDWARD LOVETTE consents that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by Defendant EDWARD LOVETTE, shorten or lift this Order.

**SERVICE OF THIS ORDER AND RELATED FILINGS**

6.      Plaintiff shall forthwith serve a copy of the Complaint, Motion, and this Order on Defendant EDWARD LOVETTE by U.S. First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff, by private process server, upon any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

7.      The above dates may be revised upon stipulation by all parties and approval of this Court.

DONE and ORDERED in Chambers in Miami, Miami-Dade County, Florida, this _14_ day of September 2018 at _2_ : _30_ a.m./p.m. EST.

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record
Defendant Edward Lovette, *pro se*

- 6 -

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-CIV-80716-ALTMAN/Brannon

**TULLIA HEISSENBERG**,

     *Plaintiff,*

*v.*

**JOHN DOE**;

     *Defendant.*

_____/

## ORDER GRANTING *EX PARTE* EMERGENCY MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

The Plaintiff has filed an Emergency Motion for Temporary Restraining Order Without Notice against Defendant JOHN DOE (the "Motion") [ECF No. 7]. The Court held a hearing on the Motion on April 22, 2021. The Court has carefully reviewed the Application and the record and is otherwise fully advised of the matter.

By the instant Application, the Plaintiff Tullia Heissenberg (the "Plaintiff") moves *ex parte* for entry of a temporary restraining order against the Defendant and an entry of an order restraining the financial accounts owned or controlled by JOHN DOE as identified in this Order, under Fed. R. Civ. P. 65.

For the reasons set forth herein, Plaintiff's Renewed *Ex Parte* Emergency Motion for Temporary Restraining Order [ECF No. 7] is **GRANTED**.

### FACTUAL BACKGROUND[1]

The Plaintiff is a retired senior citizen who, at one time, possessed approximately $4.4 million in cryptocurrency. *See* Compl. [ECF No. 1] ¶ 1. Through a process called "SIM swapping" (or "SIM

---

[1] The factual background is taken from the Plaintiff's Complaint [ECF No. 1], Renewed Application for Temporary Restraining Order [ECF No. 7], and supporting Declarations submitted by the Plaintiff [ECF Nos. 7-1, 13].

hijacking") the Defendant JOHN DOE accessed the Plaintiff's account on the cryptocurrency exchange BlockFi and, without her knowledge or authorization, withdrew her holdings. *See id.* ¶¶ 48–49.

Specifically, commencing on or about March 1, 2021 at 20:01 UTC, JOHN DOE withdrew the Plaintiff's cryptocurrency assets (listed below) from her BlockFi account— all without her knowledge or authorization. *See id.* ¶ 49. JOHN DOE deposited those assets into two cryptocurrency wallets owned or controlled by or for JOHN DOE: bc1qdjkc4e3u8jup6axtda560z720vapq5p34pmwgu (the "JOHN DOE BTC Wallet") and 0xC51f0cbf92030F50829B244f8D876d5843b8A955 (the "JOHN DOE ETH Wallet") (collectively, the "JOHN DOE Wallet Addresses"):

| # | Transfer Date (UTC) | Asset sent to JOHN DOE Wallet Address or Fee Charged | JOHN DOE Wallet Address |
|---|---|---|---|
| 1 | 2021-03-01 20:01:47Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z720vapq5p34pmwgu |
| 2 | 2021-03-01 20:01:47Z | 0.0025 BTC Withdrawal Fee | |
| 3 | 2021-03-01 20:01:52Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |
| 4 | 2021-03-01 20:01:52Z | 0.0015 ETH Withdrawal Fee | |
| 5 | 2021-03-01 20:01:54Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |
| 6 | 2021-03-01 20:01:54Z | 0.0015 ETH Withdrawal Fee | |
| 7 | 2021-03-01 20:01:56Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |
| 8 | 2021-03-01 20:01:56Z | 0.0015 ETH Withdrawal Fee | |
| 9 | 2021-03-01 20:01:59Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244f8D876d5843b8A955 |

| 10 | 2021-03-01 20:01:59Z | 0.0015 ETH Withdrawal Fee | |
| 11 | 2021-03-01 20:02:01Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 12 | 2021-03-01 20:02:01Z | 0.0015 ETH Withdrawal Fee | |
| 13 | 2021-03-01 20:02:04Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 14 | 2021-03-01 20:02:04Z | 0.0015 ETH Withdrawal Fee | |
| 15 | 2021-03-01 20:02:16Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 16 | 2021-03-01 20:02:16Z | 0.0015 ETH Withdrawal Fee | |
| 17 | 2021-03-01 20:02:18Z | 99.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 18 | 2021-03-01 20:02:18Z | 0.0015 ETH Withdrawal Fee | |
| 19 | 2021-03-01 20:02:45Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 20 | 2021-03-01 20:02:45Z | 0.0025 BTC Withdrawal Fee | |
| 21 | 2021-03-01 20:03:06Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 22 | 2021-03-01 20:03:06Z | 0.0025 BTC Withdrawal Fee | |
| 23 | 2021-03-01 20:03:32Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 24 | 2021-03-01 20:03:32Z | 0.0015 ETH Withdrawal Fee | |
| 25 | 2021-03-01 20:03:39Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 26 | 2021-03-01 20:03:39Z | 0.0015 ETH Withdrawal Fee | |
| 27 | 2021-03-01 20:03:43Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 28 | 2021-03-01 20:03:43Z | 0.0015 ETH Withdrawal Fee | |

| 29 | 2021-03-01 20:03:45Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
|---|---|---|---|
| 30 | 2021-03-01 20:03:45Z | 0.0015 ETH Withdrawal Fee | |
| 31 | 2021-03-01 20:03:47Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 32 | 2021-03-01 20:03:47Z | 0.0015 ETH Withdrawal Fee | |
| 33 | 2021-03-01 20:03:49Z | 49.9985 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |
| 34 | 2021-03-01 20:03:49Z | 0.0015 ETH Withdrawal Fee | |
| 35 | 2021-03-01 20:04:16Z | 5 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 36 | 2021-03-01 20:05:08Z | 4.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 37 | 2021-03-01 20:05:08Z | 0.0025 BTC Withdrawal Fee | |
| 38 | 2021-03-01 20:40:19Z | 2.9975 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 39 | 2021-03-01 20:40:19Z | 0.0025 BTC Withdrawal Fee | |
| 40 | 2021-03-03 21:53:20Z | 0.024 BTC | bc1qdjkc4e3u8jup6axtda560z 720vapq5p34pmwgu |
| 41 | 2021-03-03 21:53:20Z | 0.0025 BTC Withdrawal Fee | |
| 42 | 2021-03-03 22:54:50Z | 8 ETH | 0xC51f0cbf92030F50829B244 f8D876d5843b8A955 |

A.     Almost every withdrawal from the Plaintiff's BlockFi account was assessed a withdrawal fee. *See* Mot. at ¶ 50.

B.     Based on a report from the cryptographic tracing firm Coinfirm, *see* Plaintiff's Supplemental Declaration, Ex. A [ECF No. 13] at 2, the Plaintiff has identified electronic wallet addresses associated with the Plaintiff's stolen funds. From the JOHN DOE Wallet Addresses, many

of the stolen assets were then transferred to other wallets/accounts maintained by or for JOHN DOE

(collectively, the "JOHN DOE Secondary Addresses"):

| # | Recipient Cryptocurrency Exchange | Destination Address | Asset and Tracing Amount |
|---|---|---|---|
| 1 | | bc1qfwxkmzln5g3g0n8vw5dqsv4vtxumh5xscyzr9l | 4.777099848 BTC |
| 2 | | bc1qkjhlymppxz4g4h6xle8u6scd8d6tm8s657zqqy | 3.401842272 BTC |
| 3 | Xapo.com | 19JyAkHKh36sFduqK4hMsMZhU6ZDoLotW | 2.33906575 BTC |
| 4 | | 13jWBgfYQRs1pPwsWhk9jtvjfDMgdByknP | 2.20246077 BTC |
| 5 | | bc1qe8esnkcwyvnnfe5f3ksfmj9eyktq9u0635lhuv | 1.478941262 BTC |
| 6 | | 327uTRES6ThXupKUAt1Xuk2pD9BiZaZ4wT | 1.10657357 BTC |
| 7 | BitPay | 15oRB2myPpq8h1jTdRDKE58WXPpSYgK6Qr | 1.105248136 BTC |
| 8 | Poloniex | 12vZ3fU66g4XTeomUYCEPp9rcsWjexgzR7 | 0.497294128 BTC |
| 9 | Binance | 15cxBdcNYsdkTW6JoM3Q4xshRF6x8vYrEc | 0.41288896 BTC |
| 10 | Coinbase | 3LF1XGESznTATC7dMQ2zWmZdf4WEJCcehj | 0.3 BTC |
| 11 | Gemini | bc1qss5ejcqfrmjm9lfydshanhjkc7wnlhk4khlsj8 | 0.250298812 BTC |
| | | | |
| 12 | Binance | e86433d2068bd319a54128117849b511f3e0ed42 | 1091.1566815047 ETH |
| 13 | Coincheck | 24ba1542f8a0a20e8251d096213384cfb0ee3dbc | 6.322870267 ETH |
| 14 | | 0c32245e86764a61de9feaad1315ac7ceaac70b2 | 0.0135378573 ETH |
| 15 | | 85dbca0a9bfee831f266065b6142f9ed3b5b1dd7 | 7.9214341878 ETH |
| 16 | | a1b78d4c51c50f30c936c3f941c2e206b71b3983 | 0.0005026098 ETH |
| 17 | | f7dddfbdb3ea8e0cadf101f37fe08695a955e25c | 0.0180210793 ETH |
| 18 | Binance | bfaa724c8fc49e490947e4c7c8d597b6336b67ac | 0.621182859 ETH |
| 19 | | 2fbbfe6e64d55168cf1ccfc993e61f2c4aa1ef06 | 0.0239687943 ETH |
| 20 | | 9b5b25216601f065aacbe8e641fa897163a69c2b | 1.6162668327 ETH |
| 21 | | 6da237bb6942e5d807a5ac55e7d17e487688d5ee | 0.0329650529 ETH |
| 22 | | 31385d3520bced94f77aae104b406994d8f2168c | 0.0100385744 ETH |
| TOTALS | | | 17.87171351 BTC |
| | | | 1107.73746962 ETH |

     C.     The cryptocurrency assets at issue are specific, identifiable property and can be traced in JOHN DOE's assets in either the JOHN DOE Wallet Addresses or the JOHN DOE Secondary Addresses.

## LEGAL STANDARD

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.,* 415 U.S. 423, 439 (1974).

## CONCLUSIONS OF LAW

The declaration the Plaintiff has submitted in support of its *Ex Parte* Application for Temporary Restraining Order supports the following conclusions of law:

A. Plaintiff has shown a substantial likelihood of success on the merits of her claims against the Defendant JOHN DOE for: (1) conversion; (2) replevin; (3) violations of the Computer Fraud and Abuse Act ("CFAA") under 18 U.S.C. § 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C); and (4) unjust enrichment as well as for imposition of a constructive trust and disgorgement of funds held by JOHN DOE in either the JOHN DOE Wallet Addresses or any JOHN DOE Secondary Addresses (defined below) to which JOHN DOE transferred any portion of the funds stolen from Plaintiff.

B. Because of the speed and potential anonymity of cryptocurrency transactions, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted.

C. Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, Plaintiff has good reason to believe the Defendant will hide or transfer his ill-gotten gains beyond the jurisdiction of this Court unless those assets are restrained.

D. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

E. The Plaintiff was victimized by the theft of her cryptocurrency assets, and it appears from the record that JOHN DOE has no right to claim either possession or ownership of the Plaintiff's stolen assets. Therefore, there is a high likelihood Plaintiff will succeed on her claims.

F. The balance of hardships also favors Plaintiff, because a Temporary Restraining Order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing.

G. Entry of a Temporary Restraining Order will not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN]

(a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.

Having reviewed the Plaintiff's Complaint, Renewed Motion for *Ex Parte* Temporary Restraining Order, and supporting evidentiary submissions, the Court hereby

**ORDERS and ADJUDGES** that the Plaintiff's Renewed Motion for *Ex Parte* Temporary Restraining Order [ECF No. 7] against Defendant JOHN DOE is **GRANTED**, according to the terms set forth below.

### TEMPORARY RESTRAINING ORDER

1.      Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) the JOHN DOE Wallet Addresses and any JOHN DOE Secondary Addresses, (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in either the JOHN DOE Wallet Addresses and any JOHN DOE Secondary Addresses.

### NOTICE NOT PROVIDED TO PRESENTLY-UNIDENTIFIED DEFENDANT

2.      Notice was not provided to Defendant JOHN DOE prior to entry of this Order because his identity is presently unknown to Plaintiff. By separate Order, the Court is simultaneously

herewith granting the Plaintiff's request to engage in expedited discovery through which Plaintiff intends to obtain from the Recipient Cryptocurrency Exchanges listed above Defendant JOHN DOE's identity, including a physical and/or electronic address at which Defendant JOHN DOE can be contacted about the claims asserted against him in this lawsuit.

## BOND TO BE POSTED

3.      Fed. R. Civ. P. 65(c) requires that the Plaintiff must typically post security. The Plaintiff shall post a bond in the amount of **One Thousand Eight Hundred Dollars and Zero Cents ($1,800)**, as payment of damages to which the Defendant may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice. In lieu of a bond, the Plaintiff may post cash or its equivalent with the Clerk of Court.

## PRELIMINARY INJUNCTION HEARING

4.      A **videoconference hearing** is set before this Court on **May 6, 2021 at 2:00 p.m.** via Zoom videoconference, at which time the Defendant and/or any other affected person may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on the Plaintiff's requested preliminary injunction. The Meeting ID is 161 2752 2255. The password is 7777.

5.      Any response or opposition to the Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel by **April 30, 2021**. Plaintiff shall file any Reply Memorandum on or before **May 3, 2021**. The above dates may be revised upon stipulation by all parties and approval of this Court. The Defendant is hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them under Fed. R. Civ. P. 65 and this Court's inherent authority.

### Duration of Temporary Restraining Order

6.    The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant JOHN DOE consents that it should be extended for a longer period of time. The Court may, on demonstration of good cause by any party-of-interest, shorten or lift this Order.

### Service of this Order and Related Filings

7.    As soon as is practical upon learning from the Recipient Cryptocurrency Exchanges Defendant JOHN DOE's true identity and obtaining his contact information, Plaintiff shall forthwith serve a copy of the Complaint, Motion, and this Order on the Defendant JOHN DOE and any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

   **DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of April 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TITUS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:21-03074-CV-RK |
| | ) | |
| JOHN DOE,  COINBASE GLOBAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice against Defendant JOHN DOE (the "Motion"). (Doc. 2.) Under Federal Rule of Civil Procedure 65, a Court may grant a Temporary Restraining Order *ex parte*. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See*, Fed.R.Civ.P. 65(b)(1). Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record. The Order expires at a time after entry -- not to exceed fourteen (14) days." *Id*. at (b)(2).

In evaluating the Motion, this Court has considered the following factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the state of the balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).

In so ruling, the Court rejects Defendant COINBASE Global, Inc.'s arguments that it cannot be ordered to produce the identity of JOHN DOE based on the contention that the proper COINBASE defendant is COINBASE Europe because COINBASE Global is a corporate holding company for the COINBASE affiliates. In the context of a parent/subsidiary relationship, "control" is determined by considering three elements:  (1) the corporate structures of the party to

whom the discovery is directed and the non-party in physical possession of the requested documents, (2) the non-party's connection to the subject matter of the litigation, and (3) whether the non-party will feel the benefits or burdens of any award in the case. *Orthoarm, Inc. v. Forestadent USA, Inc.*, No. 4:06-CV-730 CAS, 2007 WL 1796214, at *2 (E.D. Mo. June 19, 2007). A court may order a non-party parent corporation in a foreign country to produce documents physically held abroad. *Id.* (citations omitted).

Here, the documents of COINBASE Europe are within the possession, custody, and control of COINBASE Global for several related reasons. First, the public S-1 (Doc. 14-1) supports the finding that that the two entities have overlapping corporate structures.[1] Second, COINBASE Global does not appear to meaningfully dispute that it shares the same platform as all of the COINBASE entities, including COINBASE Europe. Even assuming that fact was in dispute, COINBASE Global was able to quickly secure an agreement from COINBASE Europe that the documents would not be released for a minimum of days (first ten days, and later twenty). "The party to whom the discovery is directed need not have legal ownership or actual physical possession, but rather a 'practical ability' to obtain the documents." *Wells v. FedEx Ground Package Sys., Inc.*, No. 4:10-CV-02080-JAR, 2012 WL 4513860, at *1 (E.D. Mo. Oct. 1, 2012). *See also Republic Tech. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2017 WL 4287205, at * 3 (N.D. Ill. Sept. 27, 2017) (noting the parent company offered to "work with" the subsidiary to obtain information); *Hiser v. Volkswagon Group of Am., Inc.*, No. 5:14-CV-170-TBR-LLK, 2016 WL 11409339, at *7 (W.D. Ken. Aug. 1, 2016) (noting multiple reasons why parent company VWAG exerts sufficient control over Audi to obtain responsive documents and

---

[1] For example, the S-1 filing states in part under "Nature of Operations" (Doc. 14-1 at 264):

> Coinbase, Inc. was founded in 2012. In April 2014, in connection with a corporate reorganization, Coinbase, Inc. became a wholly-owned subsidiary of Coinbase Global, Inc. (together with its consolidated subsidiaries, the "Company").
>
> The Company operates globally and is a leading provider of end-to-end financial infrastructure and technology for the cryptoeconomy. The Company offers retail users the primary financial account for the cryptoeconomy, institutions a state of the art marketplace with a deep pool of liquidity for transacting in crypto assets, and ecosystem partners technology and services that enable them to build crypto-based applications and securely accept crypto assets as payment.
>
> In May 2020, the Company became a remote-first company. Accordingly, the Company does not maintain a headquarters.

other information, including that VWAG owns Audi's stock and that VWAG includes Audi's sales revenue in its annual sales revenue reporting).

The Court additionally has determined Plaintiff is not required to apply for "Letter of Request and/or Letters Rogatory." *See Societé Nationale Industrielle Aéropostale v. U. S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 539 (1987) (holding that "Hague Convention did not deprive the District Court of the jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence located within a signatory nation."). *Aéropostale* set forth five factors to consider in order to warrant production of relevant documents: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Id*. at n.28 (citation omitted).

Here, first, the documents and information to be produced are business records relevant to the claims and defenses in this case and thus meet the standard for discovery under Fed.R.Civ.Pro. 26. Second, the document requests are designed to obtain only documents and data relevant to the litigation. The third factor, whether the information originated in the United States, is unknown at this time, but the complaint alleges the cause of action accrued within the jurisdiction of the Western District of Missouri. Fourth, the Court is unaware of an effective alternative means of securing the information underpinning this claim, which arose in this jurisdiction through the alleged acts of Doe, whose alleged unlawfully held funds are located abroad. Fifth, preventing production would substantially hinder and undermine the vital interest of the United States in the ordinary operation of its civil justice system, which depends on the ability of each party to obtain documents and data in the manner in which it is kept in the ordinary course of business.

Having reviewed the Motion, the file, and being otherwise sufficiently advised in the premises, the Court hereby finds as follows:

1.    Plaintiff has shown a strong likelihood of success on the merits of his claims against Defendant JOHN DOE for conversion as well as for imposition of a constructive trust and disgorgement of funds held in an account(s) maintained by, or for, Defendant JOHN DOE at COINBASE, Global, Inc., a Delaware-based cryptocurrency exchange (hereafter "COINBASE").

2.      Specifically, on February 26, 2021, 33.7398 bitcoin were stolen from an account maintained in Plaintiff's individual name at Blockchain.com, a cryptocurrency wallet and exchange used by thousands of consumers to invest and store cryptocurrency.

3.      As concluded by a cryptographic tracing firm, at least 2.895032 BTC of the 33.7398 BTC transferred from Plaintiff's Blockchain.com account were transferred in two separate, but related, transactions to a single deposit address at COINBASE (the "COINBASE Address"), *to wit*:

| # | Coinbase Address | Transaction Hash | Transfer Date (UTC) | Amount sent to address (BTC) |
|---|---|---|---|---|
| 1 | 3Q4We7jETMLr3hVJj7 UghJYdAxBFY7JxYZ | 9853e7933502e01390cbe4cedd3 0c04cf56fb7457de41a06c0f5256 e4e39181b | 2021-02-26 04:27:11 | 0.02009225 |
| 2 | 3Q4We7jETMLr3hVJj7 UghJYdAxBFY7JxYZ | f452cdf6eb8cd9ff77c32f349f688 b0ea9a16d4f5a2e4b82758f9fe32 f44e480 | 2021-02-26 04:31:45 | 2.87493958 |
| | | | **TOTAL** | **2.895032 BTC** |

4.      COINBASE has represented that JOHN DOE is the owner of the account tied to the COINBASE Address, though -- in accordance with, *inter alia*, its Privacy Policy, COINBASE has represented that it is obligated to protect JOHN DOE's identity unless ordered to reveal his identity or other personal information by a court of competent jurisdiction or by a quasi-judicial body -- COINBASE has not revealed JOHN DOE's actual name or any address at which he can be located or contacted.

5.      In addition to the foregoing, the cryptographic tracing firm has identified numerous private cryptocurrency wallets to which the bitcoin stolen from Plaintiff was sent.

6.      The cryptocurrency assets at issue are specific, identifiable property and can be traced to the assets stolen from Plaintiff.

7.      Plaintiff has established that his rights will be immediately and irreparably harmed absent a Temporary Restraining Order inasmuch as a Court Order can best secure the funds in question.  Without entry of the Temporary Restraining Order, Plaintiff may be unable to recover for his equitable claims.

8.    Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze JOHN DOE's assets at COINBASE and the private cryptocurrency wallets to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiff.

9.    Plaintiff was victimized by the theft of his cryptocurrency assets, and it appears from the record that JOHN DOE has no right to claim either possession or ownership of Plaintiff's stolen assets.  Therefore, there is a high likelihood Plaintiff will succeed on his claims.

10.    The balance of hardships also favors Plaintiff, because a Temporary Restraining Order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing.

11.    Entry of a Temporary Restraining Order will not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.

12.    Because of the apparent strength of Plaintiff's case, the Court concludes that requiring security pursuant to Fed.R.Civ.P. 65(c) is not appropriate in this case at this time.

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:

## TEMPORARY RESTRAINING ORDER

1.    Plaintiff's Motion for Temporary Restraining Order against Defendant JOHN DOE is GRANTED.

2.    Defendant JOHN DOE and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) any account at COINBASE, (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any

cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than at COINBASE.

3. COINBASE has represented to the Court that COINBASE and/or its subsidiary Coinbase Europe, Ltd. will provide Plaintiff twenty (20) days' written notice prior to any intended lifting of the injunction of any account(s) at COINBASE or Coinbase Europe, Ltd. maintained by, for, or on behalf of, Defendant JOHN DOE or any business entity through which he acts or which acts in active concert or participation with him.

4. The Court further orders that the following private cryptocurrency wallets which, as of the date of this Order, are believed to be storing bitcoin stolen from Plaintiff, are likewise temporarily restrained from withdrawing, transferring, or encumbering any assets held in those wallets:

| # | Wallet | Amount of Bitcoin Stored in Wallet |
|---|--------|-----------------------------------|
| 1 | 3B7f8RpU4JYTGg7Nfzj2Za9rW6BSFMPgDc | 18.36248574 |
| 2 | 32ShuMM9WonbeLQZEbqNQvGt1BQtMEbE3W | 4.95212572 |
| 3 | 1PM9vfQoVgTMEfGjVJykrnTyEJUk6rZw3g | 3.18083050 |
| 4 | 1HeEUM3ZPp62twAThkwVhU8JqK8hjCCykL | 2.22350140 |
| 5 | 1GHUstbeDCZs3LheqSwqb9KGCbYhQmk3V7 | 0.78288052 |
| 6 | 1Hct4e23YXtCsQnzCCAbpmFFYrk3N4UbGk | 0.53792282 |
| 7 | 1JAa4PMU9XWepeCBi3SFGnPtXYQEWbLsBT | 0.20922858 |
| 8 | 1Hyjhm7f5uKDjafr9BHFh1cAvUzb2NX2ey | 0.08181208 |
| 9 | 1B5yVWxuPcSq4ah2ycxQRQFJdyEcZ4cwUJ | 0.02011707 |
| | TOTAL | 30.78370898 BTC |

**N**OTICE **N**OT **P**ROVIDED TO **P**RESENTLY-**U**NIDENTIFIED **D**EFENDANT

5. Notice was not provided to Defendant JOHN DOE prior to entry of this Order because his identity is presently unknown to Plaintiff. By separate Order, the Court is simultaneously herewith granting Plaintiff's request to engage in expedited discovery through which Plaintiff intends to obtain from COINBASE or Coinbase Europe, Ltd. Defendant JOHN DOE's identity, including his name and a physical and/or electronic address at which Defendant JOHN DOE can be contacted about the claims asserted against him in this lawsuit.

## BOND TO BE POSTED

6.     Pursuant to Fed.R.Civ.P. 65(c), requiring that security must typically be posted by Plaintiff, the Court has determined that $100 would be more than adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained, and therefore, pursuant to Fed.R.Civ.P. 65, within ten days from the date of this Order, Plaintiff shall post a bond in the amount of $100 to secure this Order.  In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

7.     Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as means of providing a source of funds to which Defendant JOHN DOE may be entitled for a wrongful injunction or restraint.

## PRELIMINARY INJUNCTION HEARING

8.     Pursuant to Fed.R.Civ.P. 65(b), Defendant JOHN DOE shall appear on April 15, 2021 at 9 a.m. CST, before United States District Judge Roseann A. Ketchmark at the Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street - Courtroom 8E, Kansas City, MO 64106, for an evidentiary hearing at which Defendant JOHN DOE may show good cause why this Court should not enter a preliminary injunction, enjoining the violations of law alleged in Plaintiff's Complaint and imposing such additional relief as the Court deems just and proper, pending final ruling on the claims asserted against Defendant JOHN DOE.

9.     Defendant JOHN DOE shall file with the Court and serve on Plaintiff's counsel any answering affidavits, pleadings, motions, expert reports or declarations and/or legal memoranda no later than five (5) days prior to the hearing for preliminary injunction.

10.     If Defendant JOHN DOE timely files with the Court any papers opposing entry of a preliminary injunction, Plaintiff may file with the Court responsive or supplemental pleadings, materials, affidavits, or memoranda and serve same on Defendant JOHN DOE shall or his counsel-of-record no later than two (2) days prior to the preliminary injunction hearing.

11.     Defendant JOHN DOE is hereby on notice that failure to timely serve and file his opposition, or failure to appear at the hearing, may result in the imposition of a preliminary injunction against him pursuant to Fed.R.Civ.P. 65.

## DURATION OF TEMPORARY RESTRAINING ORDER

12.     The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed.R.Civ.P. 65(b)(2) unless, for good cause shown, this Order is extended or

Defendant JOHN DOE consents that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

SERVICE OF THIS ORDER AND RELATED FILINGS

13.     COINBASE and/or its relevant subsidiary shall forthwith serve upon Defendant JOHN DOE a copy of the Complaint, Motion, and this Order by First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of theirs, or by private process server; and shall -- within three (3) business days of such service -- file with the Court proof of service of same.

14.     Additionally, Plaintiff -- as soon as is practical upon learning his/her true identity and obtaining his/her contact information -- shall forthwith serve a copy of the Complaint, Motion, and this Order by First Class Mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of Plaintiff or by private process server, upon any person other than JOHN DOE or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order. These impacted parties-in-interest would include any owner(s) of the private wallet address(es) listed above.

15.     The above dates may be revised upon stipulation by all parties and approval of this Court.

**IT IS SO ORDERED** this 1st day of April 2021 at 11:35 a.m. CST.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 1, 2021